**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| KEVIN YASHTINSKY,<br><br>　　　　　　　　　*Plaintiff*,<br>　　　　v.<br><br>WALMART, INC.,<br><br>　　　　　　　　　*Defendant*. | Case No. 5:19-CV-05105-TLB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WALMART INC.'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THE ACTION**

Meredith C. Slawe (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103
(215) 965-1202 Phone
(215) 965-1210 Fax
mslawe@akingump.com

Karen P. Freeman
Ark. Bar No. 2009094
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive, Suite 200
Rogers, AR 72758
(479) 464-5682 Phone
(479) 464-5680 Fax
kfreeman@mwlaw.com

*Attorneys for Defendant Walmart Inc.*

## **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................3

III.    ARGUMENT .........................................................................................................3

        A.      Plaintiff Cannot Plausibly Plead a Claim under the TCPA and Therefore
                the Complaint Should be Dismissed ........................................................3

                1.      Standard of Review......................................................................4

                2.      Plaintiff Fails to Sufficiently Allege the Use of an ATDS ..........4

                3.      Plaintiff's Own Allegations Reflect That Any Amendment
                        Would Be Futile...........................................................................7

        B.      In the Alternative, This Court Should Stay the Action Pending the
                FCC's Imminent Ruling on the Definition of an ATDS........................10

                1.      This Action Should Be Stayed Pursuant to the Primary
                        Jurisdiction Doctrine.................................................................11

                2.      This Action Should Also Be Stayed Pursuant to this Court's
                        Inherent Authority.....................................................................14

IV.     CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018) ............................................................................7, 10

*Access Telecomms. v. Sw. Bell Tel. Co.*,
  137 F.3d 605 (8th Cir. 1998) ............................................................................12, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................4, 8

*Bader v. Navient Sols.*,
  No. 18-1367, 2019 U.S. Dist. LEXIS 100396 (N.D. Ill. June 14, 2019) ................9

*Banks v. Green Tree Servicing, LLC*,
  No. 14-2825, 2015 U.S. Dist. LEXIS 27172 (N.D. Ill. Mar. 5, 2015) ....................5

*Baranski v. NCO Fin. Sys., Inc.*,
  No. 13-6349, 2014 U.S. Dist. LEXIS 37880 (E.D.N.Y. Mar. 21, 2014) ..................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................4, 8

*Buhr v. ADT, Inc.*,
  No. 18-80605 (S.D. Fla. July 25, 2018) ................................................................16

*Calhoun v. Invention Submission Corp.*,
  No. 18-1022, 2019 U.S. Dist. LEXIS 60699 (W.D. Pa. Apr. 9, 2019) ....................5

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
  467 U.S. 837 (1984) ........................................................................................13, 16

*Christianson v. Ocwen Loan Servicing, LLC*,
  No. 17-1525, 2017 U.S. Dist. LEXIS 191521 (D. Minn. Nov. 20, 2017) ..............15

*Dominguez v. Yahoo, Inc.*,
  894 F.3d 116 (3d Cir. 2018) ..................................................................7, 8, 10, 11

*Far E. Conference v. United States*,
  342 U.S. 570 (1952) ............................................................................................11

*Fried v. Sensia Salon, Inc.*,
  No. 13-0312, 2013 U.S. Dist. LEXIS 168645 (S.D. Tex. Nov. 27, 2013) ..............14

*Gelakoski v. Colltech, Inc.*,
    No. 12-0498, 2013 U.S. Dist. LEXIS 3786 (D. Minn. Jan. 10, 2013)......................................5

*Gensel v. Performant Techs., Inc.*,
    No. 13-1196, 2015 U.S. Dist. LEXIS 9736 (E.D. Wis. Jan. 28, 2015) ............................13–14

*Hazan v. Wells Fargo & Co.*,
    No. 18-10228, 2019 U.S. Dist. LEXIS 72748 (D.N.J. Apr. 30, 2019) ....................................5

*Higgenbotham v. Diversified Consultants, Inc.*,
    No. 13-2624, 2014 U.S. Dist. LEXIS 65915 (D. Kan. May 14, 2014)....................................14

*Hulsey v. Peddle, LLC*,
    No. 17-3843, 2017 U.S. Dist. LEXIS 221988 (C.D. Cal. Oct. 23, 2017).................................5

*Hyatt v. J.B. Hunt Transp. Servs.*,
    No. 15-05056, 2015 U.S. Dist. LEXIS 192418 (W.D. Ark. June 16, 2015) ............................5

*Johansen v. Vivant, Inc.*,
    No. 12-7159, 2012 U.S. Dist. LEXIS 178558 (N.D. Ill. Dec. 18, 2012)..................................6

*Jones Truck Lines v. WD40 Co.*,
    No. 94-5054, 1994 U.S. Dist. LEXIS 10966 (W.D. Ark. July 29, 1994) ...............................12

*Jones v. FMA Alliance, Ltd.*,
    978 F. Supp. 2d 84 (D. Mass. 2013) .......................................................................................6

*King v. Time Warner Cable Inc.*,
    894 F.3d 473 (2d Cir. 2018)..............................................................................................7, 11

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).............................................................................................................15

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018) .........................................................................................7, 11

*Martin v. Direct Wines, Inc.*,
    No. 15-0757, 2015 U.S. Dist. LEXIS 89015 (N.D. Ill. July 9, 2015)......................................5

*Mendoza v. UnitedHealth Grp. Inc.*,
    No. 13-1553, 2014 U.S. Dist. LEXIS 1616 (N.D. Cal. Jan. 6, 2014)....................................14

*Passero v. Diversified Consultants, Inc.*,
    No. 13-338C, 2014 U.S. Dist. LEXIS 72748 (W.D.N.Y. May 28, 2014) ..............................14

*Pendleton v. 1st Fin. Bank*,
    No. 16-4171, 2017 U.S. Dist. LEXIS 146475 (D.S.D. Sept. 11, 2017) .................................16

*Pharm. Research & Mfrs. of Am. v. Walsh*,
   538 U.S. 644 (2003)............................................................................................11, 13

*Pickens v. Am. Credit Acceptance, LLC*,
   No. 14-0201, 2014 U.S. Dist. LEXIS 131587 (S.D. Ala. Sept. 19, 2014)..............................13

*In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*,
   No. 11-295, 2014 U.S. Dist. LEXIS 197094 (S.D. Cal. May 28, 2014) ................................14

*Purdom v. Morgan*,
   No. 16-3072, 2017 U.S. Dist. LEXIS 4204 (W.D. Ark. Jan. 11, 2017) ................................15

*Reiter v. Cooper*,
   507 U.S. 258 (1993)...................................................................................................12

*Roark v. Credit One Bank*,
   No. 16-173, 2018 U.S. Dist. LEXIS 193252 (D. Minn. Nov. 13, 2018) ................................7

*Secure v. Ultimate Fitness Grp., LLC*,
   18-20483, 2019 U.S. Dist. LEXIS 45194 (S.D. Fla. Mar. 18, 2019)......................................16

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   446 F.3d 808 (8th Cir. 2006) .........................................................................................15

*Snow v. GE*,
   No. 18-0511, 2019 U.S. Dist. LEXIS 99760 (E.D.N.C. June 14, 2019) .............................8, 9

*Sook v. Nielsen Co. (US), LLC*,
   No. 15-0264, 2015 U.S. Dist. LEXIS 76362 (M.D. Fla. June 12, 2015)...............................13

*Stewart v. T-Mobile USA, Inc.*,
   No. 14-2086, 2014 U.S. Dist. LEXIS 198466 (D.S.C. Oct. 8, 2014) ....................................14

*Thomas v. Abercrombie & Fitch*,
   No. 16-11467 (E.D. Mich. June 19, 2018)...........................................................................16

*Thompson-Harbach v. USAA Fed. Sav. Bank*,
   359 F. Supp. 3d 606 (N.D. Iowa Jan. 9, 2019) ....................................................................7

*Ueckert v. State Farm Bank, F.S.B.*,
   No. 17-05094, 2017 U.S. Dist. LEXIS 147899 (W.D. Ark. Sept. 11, 2017)........................4, 5

*United States v. W. Pac. R.R. Co.*,
   352 U.S. 59 (1956)...................................................................................................11, 12

*Wahl v. Stellar Recovery, Inc.*,
   No. 14-6002, 2014 U.S. Dist. LEXIS 132200 (W.D.N.Y. Sept. 18, 2014) ............................14

**REGULATORY AUTHORITIES**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    Declaratory Ruling and Order, 30 FCC Rcd. 7961 (2015) .......................................................1

**STATUTES AND RULES**

47 U.S.C. § 227 ...................................................................................................... *passim*

Fed. R. Civ. P. 8 ...................................................................................................................4

Fed. R. Civ. P. 12 .................................................................................................................4

**OTHER AUTHORITIES**

Public Notice, CG Docket Nos. 18-152, 02-278 (May 14, 2018),
    https://www.fcc.gov/document/cgb-seeks-comment-tcpa-light-dc-circuit-
    decision-aca-intl ...........................................................................................3, 10, 16

Public Notice, CG Docket Nos. 18-152, 02-278 (Oct. 3, 2018),
    https://www.fcc.gov/document/cgb-seeks-further-comment-tcpa-light-ninth-
    cir-marks-decision .................................................................................................3, 11

*Remarks of FCC Commissioner Michael O'Rielly Before the ACA International
    Washington Insights Conference* at 2–3 (May 16, 2019),
    https://www.fcc.gov/document/orielly-remarks-aca-intl-washington-insights-
    conference ..............................................................................................................11, 16

## I.   <u>INTRODUCTION</u>

On May 29, 2019, Plaintiff Kevin Yashtinsky ("Plaintiff") filed this putative class action against Defendant Walmart Inc. ("Walmart") under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").  Coined "the poster child for lawsuit abuse"[1] by the Chairman of the Federal Communications Commission ("FCC"), the TCPA has spawned an unparalleled wave of litigation—including numerous manufactured and baseless actions—because of its statutory damages provision that permits recovery of $500 to $1,500 per call, text message, or fax, with no cap on aggregate damages.  This is one such action.  Plaintiff's claim lacks merit and cannot proceed for several reasons, one of which is that it fails to sufficiently allege that the requisite equipment was used to send the single informational text message at issue.  Because Plaintiff does not, and cannot, state a facially plausible claim for relief under the TCPA, the Complaint should be dismissed.

Plaintiff's claim is based entirely on the conclusory allegation that a single informational text message he received was sent "via an 'automatic telephone dialing system,' ('ATDS') as defined by 47 U.S.C. § 227 (a)(1)."  *See* Compl. ¶ 26.  The use of an ATDS is required in order for the text message to fall within the reach of the TCPA.  It is an essential element of the claim. But Plaintiff's allegation in this regard is conclusory, unsupported, and simply parrots the language of the statute.  Courts across the country have dismissed similar TCPA text message-based claims with comparably deficient allegations regarding the purported use of an ATDS.  The same result should follow here.

---

[1]     *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961, 8073 (2015) (Now-Chairman Pai, dissenting).

Notably, the Complaint's bare and unsupported allegations are nearly identical to allegations his counsel has made in numerous other TCPA complaints in jurisdictions across the country.  Indeed, Plaintiff's curious allegation that the *text message*—which contains no *audio* elements—was placed "using 'an artificial or prerecorded *voice*,'" *see* Compl. ¶ 26 (emphasis added), is one of several allegations in the Complaint that reflect Plaintiff cut and pasted boilerplate (and indeed, inapplicable) allegations from other TCPA complaints.  This particular example was evidently taken from a TCPA complaint involving alleged telephone calls and not text messages.  Plaintiff also conflates and inconsistently references distinct consent standards under the TCPA for telemarketing and informational calls and text messages throughout the Complaint:  prior express written consent and prior express consent.  The former, which applies to telemarketing only, is wholly inapplicable to this action involving an informational text message.  Its reference is again reflective of allegations being lifted from other cases.

Moreover, in the instant case, the conclusory allegation as to the use of an ATDS is belied by the Plaintiff-specific factual allegations.  Plaintiff alleges that he received a single text message directed to a specific Walmart pharmacy customer that merely reached him by mistake.  Compl. ¶ 22.  These allegations, which are presumed to be true for purposes of a motion to dismiss, demonstrate that an ATDS was not used because his phone number was not randomly or sequentially generated and then texted (as required by the statutory definition of an ATDS).  Plaintiff's own allegations foreclose any inference that an ATDS was used to send the single challenged text message.

Plaintiff filed his Complaint notwithstanding this fatal deficiency.  Plaintiff does not—and cannot—state a facially plausible claim for relief under the TCPA.  Accordingly, Walmart respectfully requests that this Court dismiss the Complaint.  In the alternative, the Court should

2

issue a stay and defer resolution based on the FCC's impending ruling on the scope of the statutory definition of an ATDS. *See* Public Notice, CG Docket Nos. 18-152, 02-278, https://www.fcc.gov/document/cgb-seeks-comment-tcpa-light-dc-circuit-decision-aca-intl ("May 2018 Public Notice"); Public Notice, CG Docket Nos. 18-152, 02-278, https://www.fcc.gov/document/cgb-seeks-further-comment-tcpa-light-ninth-cir-marks-decision ("Oct. 2018 Public Notice").

## II.    BACKGROUND

Plaintiff's TCPA claim is premised entirely on a single informational text message that he allegedly received from Walmart on April 10, 2019. *See* Compl. ¶ 21. On its face, this text message provided instructions for a Walmart pharmacy customer to *confirm enrollment* in Walmart's prescription-alert messaging system, which is highly valued by consumers. *See id.* ¶ 22. The text message contained no marketing content. Plaintiff further alleges that he did not solicit this text message and that it "was placed via an [ATDS] as defined by 47 U.S.C. § 227 (a)(1)." *Id.* ¶ 26. He asserts a single claim for relief under the TCPA on behalf of a putative nationwide class. *Id.* ¶¶ 55–60

## III.    ARGUMENT

### A.    Plaintiff Cannot Plausibly Plead a Claim under the TCPA and Therefore the Complaint Should be Dismissed

Plaintiff's Complaint should be dismissed for failing to plausibly allege the use of an ATDS, a required element of his TCPA claim. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff's ATDS allegation rests solely on the bare legal conclusion that an ATDS was used, which is directly contradicted by his other allegations. Plaintiff fails to allege facts to support any inference that Walmart used equipment that randomly or sequentially generated and texted the phone number at issue, as required to be an ATDS by statute. *Id.* Plaintiff, instead, alleges he received (by mistake)

3

a single text message sent to a specific Walmart pharmacy customer to complete that customer's enrollment in a prescription alert program.  Plaintiff's concession that Walmart did not "randomly or sequentially" text his number is fatal to his claim.

### 1.  Standard of Review

Under the Federal Rules of Civil Procedure, a pleading must "show[] that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Courts should dismiss a complaint that "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] formulaic recitation of a cause of action's elements" will not suffice.  *Twombly*, 550 U.S. at 555.  Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *i.e.*, they must "nudge[] [the] claims across the line from conceivable to plausible."  *Id.* at 555, 570.  "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," are not entitled to the assumption of truth.  *Iqbal*, 556 U.S. at 663.

### 2.  Plaintiff Fails to Sufficiently Allege the Use of an ATDS

As this Court has explained, "merely reciting elements—alleging there is an ATDS without any supporting facts—is insufficient to state a claim."  *Ueckert v. State Farm Bank, F.S.B.*, No. 17-05094, 2017 U.S. Dist. LEXIS 147899, at *5 (W.D. Ark. Sept. 11, 2017) (Brooks, J.) (collecting cases).[2]  Accordingly, courts routinely dismiss claims that "simply parrot the language

---

[2]      In *Ueckert*, this Court found the plaintiff had provided sufficient supporting facts that an ATDS was used beyond merely reciting its use because the plaintiff alleged calls occurred at all hours of the day, the timing of the calls was unpredictable and that the calls would terminate automatically when sent to voicemail.  2017 U.S. Dist. LEXIS 147899, at *2–3.  Unlike the supporting factual details provided in *Ueckert*, here Plaintiff merely recites that Walmart used an ATDS without providing a *single fact allegation* to support an inference that the text message was sent using equipment that randomly or sequentially texted Plaintiff's number.  Moreover, his own factual assertions undermine his bare allegation that such equipment was used.

of the TCPA and conclusorily allege that defendants used an ATDS." *E.g.*, *Martin v. Direct Wines, Inc.*, No. 15-0757, 2015 U.S. Dist. LEXIS 89015, at *4 (N.D. Ill. July 9, 2015); *see also, e.g.*, *Hyatt v. J.B. Hunt Transp. Servs.*, No. 15-05056, 2015 U.S. Dist. LEXIS 192418, at *4 (W.D. Ark. June 16, 2015) (Brooks, J.) (dismissing TCPA claim where plaintiff "failed to state any facts in the Complaint that, if accepted as true, would state a claim for relief that is plausible on its face, and not merely a recitation of the elements of the cause of action"); *Hazan v. Wells Fargo & Co.*, No. 18-10228, 2019 U.S. Dist. LEXIS 72748, at *7 (D.N.J. Apr. 30, 2019) (dismissing TCPA claim where "[p]laintiff pled no facts . . . to support an inference that Defendant used an ATDS"); *Calhoun v. Invention Submission Corp.*, No. 18-1022, 2019 U.S. Dist. LEXIS 60699, at *14 (W.D. Pa. Apr. 9, 2019) (dismissing TCPA claim where "[t]here [were] no other facts alleged in the Complaint that would suggest the use of an ATDS"); *Hulsey v. Peddle, LLC*, No. 17-3843, 2017 U.S. Dist. LEXIS 221988, at *5 (C.D. Cal. Oct. 23, 2017) (dismissing TCPA claim where "allegations consist[ed] solely of paraphrases of the definition of ATDS as set forth in the TCPA"); *Banks v. Green Tree Servicing, LLC*, No. 14-2825, 2015 U.S. Dist. LEXIS 27172, at *13 (N.D. Ill. Mar. 5, 2015) (dismissing TCPA claim where plaintiff failed to allege facts as to why she believed an ATDS was used to contact her); *see also Gelakoski v. Colltech, Inc.*, No. 12-0498, 2013 U.S. Dist. LEXIS 3786, at *9 (D. Minn. Jan. 10, 2013) (dismissing TCPA claim on summary judgment where plaintiff had made only conclusory allegations that defendant had contacted him with an autodialer).  Thus, in order to survive a motion to dismiss, a plaintiff must—at a minimum—describe "the circumstances surrounding the calls [or texts] that led him to believe the defendant had used an ATDS." *Ueckert*, 2017 U.S. Dist. LEXIS 147899, at *6.  Plaintiff failed to sufficiently allege the use of an ATDS and the overwhelming case law supports dismissal on this basis.

Complaints baldly alleging that defendants used an ATDS to place calls or send text messages to plaintiffs fail to state claims under the TCPA. *See Baranski v. NCO Fin. Sys., Inc.*, No. 13-6349, 2014 U.S. Dist. LEXIS 37880 (E.D.N.Y. Mar. 21, 2014) ("[Defendant] is correct that [p]laintiffs must do more than simply parrot the statutory language. Although there is no binding precedent in this circuit, the vast majority of courts to have considered the issue have found that '[a] bare allegation that defendants used an ATDS is not enough.'" (citation omitted)); *Jones v. FMA Alliance, Ltd.*, 978 F. Supp. 2d 84, 87 (D. Mass. 2013) (denying plaintiff leave to file an amended complaint where, "[l]ike his original complaint, [p]laintiff's proposed amended complaint fails to allege that [d]efendant made any of the alleged telephone calls using an ATDS. The sole reference in the proposed amended complaint to the use of ATDS reads, in relevant part: 'On information and belief, . . . [d]efendant used an automated telephone dialing system as defined by 47 U.S.C. § 227(a)(1) [sic] when it made each and every call to [p]laintiffs [sic] wireless numbers . . . .' Such a 'bare allegation,' without more, is insufficient to sustain a TCPA claim." (footnotes omitted)); *Johansen v. Vivant, Inc.*, No. 12-7159, 2012 U.S. Dist. LEXIS 178558, at *9 (N.D. Ill. Dec. 18, 2012) ("Plaintiff provides no information about the two messages he allegedly received . . . other than stating that [defendant] left pre-recorded messages on his cellular phone using an ATDS. Without enhancing his complaint with anything more than the language already available in the statute, [p]laintiff provides only a threadbare, formulaic recitation of the elements of a TCPA cause of action, which is not entitled to an assumption of truth. . . .[I]t is not sufficient to recite that fact verbatim without other supporting details." (internal quotation marks and citations omitted)).

Here, Plaintiff has insufficiently pleaded the use of an ATDS and accordingly, the Complaint should be dismissed.

6

### 3.   Plaintiff's Own Allegations Reflect That Any Amendment Would Be Futile

Distinct from the clear pleading deficiency—that on its own requires dismissal—is the fact that Plaintiff's own allegations plead him *out* of the potential use of an ATDS.  This illustrates that any amendment to the Complaint would be futile.  The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  Numerous courts have concluded that this statutory language requires that the equipment use "a random or sequential number generator."  *See, e.g.*, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (affirming grant of summary judgment where plaintiff failed to adduce any evidence the system used to send text messages "had the present capacity to function as an autodialer by generating random or sequential telephone number and dialing those numbers"); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 479 n.5 (2d Cir. 2018) (noting that its decision as to the ATDS definition was "essentially the same" as the Third Circuit's in *Dominguez*); *ACA Int'l v. FCC*, 885 F.3d 687, 402 (D.C. Cir. 2018) ("*ACA Int'l*") ("'dialing random or sequential numbers' cannot simply mean dialing from a set list of numbers in random or other sequential order: if that were so, there would be no difference between 'dialing random or sequential number' and 'dialing a set list of number . . . .").[3]  Here, *Plaintiff not only parrots the ATDS statutory language, his only factual allegations require a ruling that an ATDS was not used.*

---

[3]      The Ninth Circuit's contrary ruling in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018) has been rejected by most courts including the courts in this circuit.  *See Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 626 (N.D. Iowa Jan. 9, 2019) (rejecting *Marks* as "erroneous as a matter of statutory construction" and granting defendant summary judgment where there was no evidence the equipment used had "the capacity to randomly or sequentially produce a number and then call that number"); *Roark v. Credit One Bank, N.A.*, No. 16-173, 2018 U.S. Dist. LEXIS 193252, at *7–8 (D. Minn. Nov. 13, 2018) (finding the *Dominguez, King and ACA Int'l* more persuasive than *Marks* and granting summary judgment where plaintiff failed to adduce any evidence that defendant's system has "the present capability to generate random or sequential numbers to dial").  Regardless, Plaintiff's failure to provide any factual basis to support the use of an ATDS is fatal under any definition.

First, he makes a conclusory allegation regarding Walmart's purported use of an ATDS that merely parrots the statutory language. *See* Compl. ¶ 26 ("This unsolicited text message call placed to [his] wireless telephone was placed via an [ATDS] as defined by 47 U.S.C. § 227 (a)(1) and by using 'an artificial or prerecorded voice' system as prohibited by 47 U.S.C. § 227 (b)(1)(A), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers."). That allegation alone is sufficient to warrant dismissal. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do").

Plaintiff, however, also alleges attendant circumstances that show the single text message was intended for a specific Walmart pharmacy customer at a designated telephone number, rather than the result of random or sequential number generation. *See* Compl. ¶¶ 22, 24. Those allegations foreclose any inference that Walmart used an ATDS to contact Plaintiff. *See Snow v. GE*, No. 18-0511, 2019 U.S. Dist. LEXIS 99760, at *11 (E.D.N.C. June 14, 2019) (dismissing TCPA claim with prejudice where facts alleged showed plaintiff was unintended recipient of targeted text messages); *see also Dominguez*, 894 F.3d at 121 (finding TCPA does not apply where text messages were sent to targeted user, rather than due to random number generation).

*Snow* is instructive. In *Snow*, the plaintiff alleged that the defendants sent her more than 2,900 text messages in violation of the TCPA. *See Snow*, 2019 U.S. Dist. LEXIS 99760, at *4. The court noted that "[c]ritically missing from the complaint [were] any facts permitting an inference that the text messages plaintiff received were sent using equipment that stores or produces numbers to be called 'using a random or sequential number generator.'" *Id.* at *11 (quoting 47 U.S.C. § 227(a)(1) (emphasis in original)). Rather, "the facts alleged suggest[ed] the

8

opposite"—"that the text messages did not reach her randomly," but instead, were meant for a specific individual and merely reached her in error. *Id.* Explaining that these facts "foreclose a determination that defendants called her with equipment using a random or sequential number generator," the court dismissed the complaint with prejudice. *Id.* at *18–20.

The same result is warranted here. In this case—as in *Snow*—Plaintiff's underlying factual allegations preclude any inference that Walmart used an ATDS to contact him. Specifically, Plaintiff alleges that the text message "stated as follows":

> WalmartRx – 1of 2 – REPLY NEEDED. TO begin receiving automated messages *on your prescriptions*, please reply YES. To decline reply STOP[.] WalmartRX – 2of2 – Terms & Conditions at Walmart.com/aler[t]terms Msg & data rates may apply. Reply HELP for help, STOP to *unenroll*[.]

Compl. ¶ 22 (emphasis added). This plain language shows that the text message was intended for a Walmart pharmacy customer who had enrolled to receive prescription alerts. Plaintiff, however, specifically pleads that he "is not a customer of a Walmart Pharmacy, has never received prescriptions from a Walmart Pharmacy and has never enrolled in Defendant's Prescription Messaging program." *Id.* ¶ 24. In other words, Plaintiff's factual allegations demonstrate that the subject text message did not reach him randomly, but was instead intended to be sent to a specific telephone number belonging to a Walmart pharmacy customer and merely reached him in error. "Because [P]laintiff alleges that the text message[] [he] received [was] intended for . . . a targeted recipient, . . . it is not reasonable to infer that the message[] [was] sent with equipment 'using a random or sequential number generator.'" *Snow*, 2019 U.S. Dist. LEXIS 99760, at *12–13; *see also Bader v. Navient Sols.*, No. 18-1367, 2019 U.S. Dist. LEXIS 100396, at *5 (N.D. Ill. June 14, 2019) (granting defendant's motion for judgment on the pleadings where plaintiff's factual allegations that the bank dialed his number to collect the debt of another individual did not evince

use of ATDS).  "The TCPA's prohibition on autodialers is therefore not the proper means of redress."  *Dominguez*, 894 F.3d at 121.

As a result, the Court should dismiss Plaintiff's Complaint, as he has asserted factual allegations that demonstrate that no ATDS could have been used.

**B.     In the Alternative, This Court Should Stay the Action Pending the FCC's Imminent Ruling on the Definition of an ATDS**

This action is ripe for dismissal for the reasons set forth above.  While there is no ambiguity in the statutory language pertaining to an ATDS and the overwhelming precedent is clear, it is expected that the FCC will confirm the majority view on the definition of an ATDS imminently in connection with a pending proceeding for which comments and reply comments have already been submitted.  Should this Court determine that it is more prudent to await the FCC's ruling, Walmart respectfully requests a temporary stay of the proceeding.

In March 2018, the D.C. Circuit vacated all prior FCC rulings to the extent that those rulings purported to define the capacity and functions a device must have in order to qualify as an ATDS.  *See ACA Int'l*, 885 F.3d at 698 ("The Commission's capacious understanding of a device's 'capacity' lies considerably beyond the agency's zone of delegated authority for purposes of the *Chevron* framework."); *id.* at 701 ("While the Commission's latest ruling purports to reaffirm the prior orders, that does not shield the agency's pertinent pronouncements from review."); *id.* at 703 ("set[ting] aside the Commission's treatment of" "the functions a device must perform to qualify as an autodialer").

Following the D.C. Circuit's entry of its mandate in the *ACA Int'l* consolidated appeal, the FCC issued a Public Notice on May 14, 2018, seeking comments "on several issues related to interpretation and implementation of the [TCPA]," including the scope of the ATDS definition. *See* May 2018 Public Notice.  Then, in October 2018, the FCC issued a second Public Notice

10

seeking further comment on the ATDS issue after the Ninth Circuit applied an expansive definition of ATDS that is contrary to the narrow interpretation embraced by other circuits. *See* Oct. 2018 Public Notice. *Compare also, e.g.*, *Dominguez*, 894 F.3d at 121 (narrowly construing ATDS) *and King*, 894 F.3d at 481 (same), *with*, *Marks*, 904 F.3d at 1053 (adopting expansive definition of ATDS).

The public comment period has closed on both the May 2018 Public Notice and Oct. 2018 Public Notice, and the FCC's ruling appears imminent. *See, e.g.*, *Remarks of FCC Commissioner Michael O'Rielly Before the ACA International Washington Insights Conference* at 2–3 (May 16, 2019), https://www.fcc.gov/document/orielly-remarks-aca-intl-washington-insights-conference ("O'Rielly Comments") (explaining that the FCC is aware of the "patchwork of interpretations by both federal circuit and district courts [that] flowed in response [to *ACA Int'l*], including those that illogically found the FCC's 2003 and 2008 orders defining an ATDS to be controlling post-*ACA*" and assuring that the FCC "*is not sitting on its hands unaware of the TCPA debates brewing in the courts and affected boardrooms*").

### 1.     This Action Should Be Stayed Pursuant to the Primary Jurisdiction Doctrine

The primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (explaining that the doctrine "seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime"); *Far E. Conference v. United States*, 342 U.S. 570, 574–75 (1952) (noting "firmly established" principle that "[u]niformity and consistency in the regulation of business entrusted to a particular

agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure[s].”); *Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) (“The doctrine allows a district court to refer a matter to the appropriate administrative agency for a ruling in the first instance, even when the matter is initially cognizable by the district court.”); *Jones Truck Lines v. WD40 Co.*, No. 94-5054, 1994 U.S. Dist. LEXIS 10966, at *9 (W.D. Ark. July 29, 1994) (“[T]he doctrine of primary jurisdiction applies when an issue arises in the course of litigation which, pursuant to a regulatory scheme, is within the special competence of an administrative agency.”).  It is “a doctrine specifically applicable to claims properly cognizable in [federal] court that contain some issue within the special competence of an administrative agency.”  *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).  Under the doctrine, “the judicial process is suspended pending referral of such issues to the administrative body for its views.”  *W. Pac. R.R. Co.*, 352 U.S. at 64; *see also Access Telecomms.*, 137 F.3d at 609.

There is “no fixed formula for determining whether to apply the doctrine of primary jurisdiction”; rather, courts conduct a case-by-case analysis to determine “whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created.”  *Access Telecomms.*, 137 F.3d at 608 (citations omitted).  Common reasons for invoking the doctrine include “obtain[ing] the benefit of an agency's expertise and experience” and “promot[ing] uniformity and consistency within the particular field of regulation.”  *Id.* (citations omitted).  Both of these reasons weigh in favor of staying this action.

***First***, Congress has given the FCC the authority to implement the TCPA, which is “a comprehensive regulatory scheme” governing the use of dialing equipment.  47 U.S.C. § 227(b)(2)

("The Commission shall prescribe regulations to implement the requirements of this subsection."). Accordingly, the FCC has specialized expertise in administrative law to issue guidance on what equipment constitutes an ATDS. That such guidance will directly affect a dispositive issue in this matter—whether the subject text message was "placed via an [ATDS] as defined by 47 U.S.C. § 227(a)(1)," *see* Compl. ¶ 26—militates sharply in favor of a stay. Indeed, the FCC's interpretation of an ATDS based on the May 2018 Public Notice may well be controlling on the legal issues before the Court arising under the TCPA. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984) (finding agency's statutory interpretations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute" where Congress has delegated "authority to the agency to elucidate a specific provision of the statute by regulation").

*Second*, staying this action pending the FCC's ruling regarding the definition of an ATDS would promote the overarching purpose of the primary jurisdiction doctrine, which is "to produce better informed and uniform legal rulings." *Pharm. Research & Mfrs. of Am.*, 538 U.S. at 673; *see also Access Telecomms.*, 137 F.3d at 608. Not surprisingly, courts routinely issued or continued stays during the FCC's rulemaking on the definition of an ATDS that led to the now-vacated 2015 Declaratory Order and Judgment. *See, e.g.*, *Pickens v. Am. Credit Acceptance, LLC*, No. 14-0201, 2014 U.S. Dist. LEXIS 131587, at *6 (S.D. Ala. Sept. 19, 2014) ("Even if this court did have the expertise necessary to decide these questions, piecemeal adjudication of what constitutes 'consent' would lead to uneven application of the TCPA."); *Sook v. Nielsen Co. (US), LLC*, No. 15-0264, 2015 U.S. Dist. LEXIS 76362, at *5 (M.D. Fla. June 12, 2015) ("Although Plaintiff asserts the lack of relevancy and attempts to predict the outcome of the FCC's ruling, regardless of how the FCC rules, their ruling will be informative of the standard of review to apply to this case."); *Gensel v. Performant Techs., Inc.*, No. 13-1196, 2015 U.S. Dist. LEXIS 9736, at

*6 (E.D. Wis. Jan. 28, 2015) (granting motion to stay based on primary jurisdiction doctrine, pending FCC's resolution of definition of ATDS); *Wahl v. Stellar Recovery, Inc.*, No. 14-6002, 2014 U.S. Dist. LEXIS 132200, at *6 (W.D.N.Y. Sept. 18, 2014) (same); *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11-295, 2014 U.S. Dist. LEXIS 197094, at *41 (S.D. Cal. May 28, 2014) (same); *Passero v. Diversified Consultants, Inc.*, No. 13-338C, 2014 U.S. Dist. LEXIS 72748, at *7–8 (W.D.N.Y. May 28, 2014) (same); *Mendoza v. UnitedHealth Grp. Inc.*, No. 13-1553, 2014 U.S. Dist. LEXIS 1616, at *7 (N.D. Cal. Jan. 6, 2014) (same); *Stewart v. T-Mobile USA, Inc.*, No. 14-2086, 2014 U.S. Dist. LEXIS 198466, at *6 (D.S.C. Oct. 8, 2014) (granting motion to stay because inter alia "the FCC is considering petitions requesting clarification of the definition of an ATDS under the TCPA, specifically with regard to the issue of whether all predictive dialers constitute an ATDS"); *Higgenbotham v. Diversified Consultants, Inc.*, No. 13-2624, 2014 U.S. Dist. LEXIS 65915, at *9 (D. Kan. May 14, 2014) ("The court agrees with defendant that the statutory reference to 'capacity' is unclear [because] [t]he seminal question of its reach is a technical one, which falls in the ambit of the FCC's administrative expertise."); *Fried v. Sensia Salon, Inc.*, No. 13-0312, 2013 U.S. Dist. LEXIS 168645, at *14 (S.D. Tex. Nov. 27, 2013) ("The Court concludes that the FCC is in the best position to opine, in the first instance, on the technical and potentially far-reaching issues implicated in Plaintiffs' claims, namely, whether the use of [defendant's] systems to transmit text messages to potential customers . . . violates the TCPA."). It follows that a stay pending the FCC's ruling on the definition of an ATDS is prudent here.

## 2. This Action Should Also Be Stayed Pursuant to the Court's Inherent Authority

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006) ("A district court has broad discretion to stay proceedings when appropriate to control its docket."); *Purdom v. Morgan*, No. 16-3072, 2017 U.S. Dist. LEXIS 4204, at *4 (W.D. Ark. Jan. 11, 2017) (Brooks, J.) (same). Determining whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Purdom*, 16-3072, 2017 U.S. Dist. LEXIS 4204, at *4 (internal quotation marks and citation omitted).

A temporary stay is also appropriate as an exercise of the Court's inherent authority to control its docket to prevent prejudice and to promote judicial economy.  As this Court has recognized, factors to consider in deciding a motion to stay include (1) the anticipated length of the requested stay; (2) whether the stay will serve to bring "clarity to the issues being litigated in this case"; (3) whether the stay will prevent the Court and the parties from "expend[ing] unnecessary resources"; and (4) whether the stay will prejudice the non-moving party.  *See id.* at *5 (ordering stay pursuant to inherent authority); *see also Christianson v. Ocwen Loan Servicing, LLC*, No. 17-1525, 2017 U.S. Dist. LEXIS 191521, at *3 (D. Minn. Nov. 20, 2017) ("In considering whether to stay proceedings, the Court considers relevant factors, including the conservation of judicial resources, maintaining control of the court's docket, providing for the just determination of cases, as well as the potential for duplicative efforts and wasted resources of the parties and hardship to the party opposing the stay.").

Here, each of these factors weighs in favor of issuing a temporary stay that would not affect a speedy resolution of the matter.  ***First***, based on the Comment Period being closed and the public remarks of the Commissioners, the FCC's ruling appears imminent such that the stay would be of limited duration and "would have a clearly defined end-point."  *See Purdom*, 2017 U.S. Dist.

LEXIS 4204, at *5 (granting stay that "would last only a few months" and "would have a clearly defined end-point"); *see also Christianson*, 2017 U.S. Dist. LEXIS 191521, at *3 (granting stay that would "be limited in duration"); *see also* O'Rielly Comments. **Second**, a stay is appropriate because the regulatory proceeding will provide clarity on a dispositive issue in this case—whether an ATDS was used to send the subject text message to Plaintiff. *See* May 2018 Public Notice at 1–3 (providing that the definition of an ATDS is a central issue of the regulatory proceeding). *See also Secure v. Ultimate Fitness Grp., LLC*, 18-20483, 2019 U.S. Dist. LEXIS 45194 (S.D. Fla. Mar. 18, 2019) (granting defendant's motion to stay while the FCC is reconsidering the definition of an ATDS); Order granting Motion to Stay, *Buhr v. ADT, Inc.*, No. 18-80605 (S.D. Fla. July 25, 2018), Dkt. No. 40 (staying a similar case arising under the TCPA while awaiting the FCC's promulgation of the revised definition of an ATDS); Order Staying Case, *Thomas v. Abercrombie & Fitch*, No. 16-11467 (E.D. Mich. June 19, 2018), Dkt. No. 71 (same). **Third**, waiting for the FCC to issue guidance on the definition of an ATDS makes sense because any rulings rendered in the meantime would have to be revisited under *Chevron* after the FCC releases its guidance. *See Chevron*, 467 U.S. at 844; *see also Pendleton v. 1st Fin. Bank*, No. 16-4171, 2017 U.S. Dist. LEXIS 146475, at *3 (D.S.D. Sept. 11, 2017) (explaining that FCC ruling regarding definition of ATDS is binding on federal courts). In other words, proceeding with the case in the absence of the FCC's ruling may cause the Court and the parties to expend unnecessary resources litigating an issue that will have to be revisited. **Fourth**, Plaintiff will suffer no prejudice from a stay, as the only damages he seeks are statutory damages arising from a single text message that was meant for a Walmart pharmacy customer. He has not alleged—and there is no reason to believe—that he has or will continue to receive such text messages in error. As a result, a temporary stay pending the FCC's forthcoming ruling would benefit this litigation and the parties to it.

16

## IV.    <u>CONCLUSION</u>

For all of the above reasons, Walmart respectfully requests that the Court dismiss Plaintiff's Complaint.  In the alternative, Walmart respectfully requests that the Court stay this action pursuant to the primary jurisdiction doctrine and/or this Court's inherent authority.


Dated: July 26, 2019                    Respectfully submitted,

*/s/ Meredith C. Slawe*

Meredith C. Slawe (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103
(215) 965-1202 Phone
(215) 965-1210 Fax
mslawe@akingump.com

Karen P. Freeman
Ark. Bar No. 2009094
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive, Suite 200
Rogers, AR 72758
(479) 464-5682 Phone
(479) 464-5680 Fax
kfreeman@mwlaw.com

*Attorneys for Defendant Walmart Inc.*

17