# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

KEVIN YASHTINSKY, on behalf of )  Case No.: 5:19-CV-05105-TLB
himself, and all others similarly situated, )
                                   )
       Plaintiff, )
                                     )  **CLASS ACTION**
       v. )
                                     )
WALMART, INC., )
                                     )
                                     )
       Defendant. )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT WALMART INC'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THE ACTION

Joe P. Leniski, Jr. (TN Bar No. 22891)
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
(615) 254-8801
joeyl@bsjfirm.com

James Albert Streett
Streett Law Firm P.A.
P.O. Box 650
107 West Main
Russellville, AR 72811
(479) 968-2030
Fax: (479) 968-6253
Email: james@streettlaw.com

Alexis M. Wood (*Admitted Pro Hac Vice*)
alexis@consumersadvocates.com
LAW OFFICES OF RONALD A. MARRON
651 Arroyo Drive
San Diego, CA  92103
Tel: (619) 696-9006
Fax: (619) 564-6665

*Attorneys for Plaintiff and the Proposed Class*

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

II.  SUMMARY OF ALLEGATIONS ........................................................................... 2

III. LEGAL STANDARD ............................................................................................... 3

IV.  ARGUMENT ............................................................................................................ 4

   A.  Plaintiff's Pleading for a Claim Under the TCPA is Sufficient........................... 4

      1.  Plaintiff Has Sufficiently Alleged Walmart's Use of an ATDS ..................... 5

      2.  Additional Factual Allegations in the Complaint are Consistent with Walmart's Use of
      an ATDS .................................................................................................................... 6

      3.  Walmart's Argument that the Statutory Definition of an ATDS Requires a Phone
      Number to be Randomly or Sequentially Dialed is Erroneous ............................... 9

      4.  Dictionary Definitions, Along with FCC and Judicial Usage, Show that Text Messages
      Like Walmart's Feature "an Artificial or Prerecorded Voice".............................. 11

   B.  The Case Should Not be Stayed Under the Primary Jurisdiction Doctrine ...................... 13

      1.  Courts are competent to define ATDS ........................................................ 13

      2.  A stay does not promote efficiency and would cause needless delay........................... 15

   C.  The Case Should Not be Stayed Under Inherent Authority.............................................. 17

   D.  As Allegations are that the Text messages are Prerecorded Voice Messages, ACA
   International Does not Apply ...................................................................................... 21

V.   CONCLUSION ........................................................................................................ 22

## **TABLE OF AUTHORITIES**

**Cases**                                                                                        **Page(s)**

*Abbas v. Selling Source, LLC*,
    No. 09 CV 3413, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ................................8

*Abrantes v. Northland Grp., Inc.*,
    No. 14-CV-05311-YGR, 2015 WL 1738255 (N.D. Cal. Apr. 13, 2015) ...............................19

*ACA Int'l v. Fed. Commcn's Comm'n*,
    885 F.3d 687 (D.C. Cir. 2018) ...................................................... *passim*

*Adams v. Ocwen Loan Servicing, LLC*,
    366 F. Supp. 3d 1350 (S.D. Fla. 2018) ...............................10

*Am. Land Holdings of Indiana, LLC v. Jobe*,
    655 F. Supp. 2d 882 (S.D. Ind. 2009), aff'd, 604 F.3d 451 (7th Cir. 2010) ...........................11

*Anderson v. Credit One Bank, Nat'l Ass'n*,
    No. 16cv3125, 2017 WL 4654646 (S.D. Cal. Oct. 17, 2017)...................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................3, 4, 6

*Baum v. ADT LLC*,
    No. CV 18-0777, 2018 WL 5255219 (W.D. Pa. Oct. 22, 2018) ...............................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................3, 6, 7

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...........................................................3

*Brandt v. Ocwen Loan Servicing, LLC*,
    No. 117CV00643DADEPG, 2017 WL 5878581 (E.D. Cal. Nov. 29, 2017) .......................20

*Buslepp v. B & B Entm't, LLC*,
    No. 12-60089-CIV, 2012 WL 1571410 (S.D. Fla. May 3, 2012)...............................6

*Chyba v. Bayview Loan Servicing*,
    LLC, No. 14-cv-1415, 2016 WL 5405557 (S.D. Cal. Sept. 27, 2016) ...................13

*Dendy v. Chartrand*,
    No. 18-CV-1118-WPJ, 2019 WL 719762 (D. N.M. Feb. 20, 2019) .......................6

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3d Cir. June 26, 2018) ...........................................15, 17

*Duguid v. Facebook, Inc.*,
  926 F.3d 1146 (9th Cir. 2019) ..................................................................................9

*Espejo v. Santander Consumer USA, Inc*.,
  No. 11 C 8987, 2019 WL 2450492 (N.D. Ill. June 12, 2019) ...................................9

*F.T.C. v. Asia Pac. Telecom, Inc.*,
  802 F. Supp. 2d 925 (N.D. Ill. 2011) .....................................................................13

*Getz v. DIRECTV, LLC*,
  *359 F. Supp.3d 1222* (S.D. Fla. 2019) ...................................................................10

*Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc*.,
  87 F.R.D. 53 (E.D. Pa. 1980)..................................................................................18

*Gonzalez v. HOSOPO Corp.*,
  371 F. Supp. 3d 26 (D. Mass. 2019) .........................................................................9

*Gould v. Farmers Ins. Exch*.,
  326 F.R.D. 530 (E.D. Mo. 2018) .......................................................................1, 18

*Griffin v. Nationstar Mortg. LLC*,
  No. 3:17-cv-100, 2017 WL 3648981 (S.D. Miss. Aug. 23, 2017) ..........................20

*Grogan v. Aaron's Inc*.,
  No. 1:18-cv-2821-AT, 2018 WL 6040195 (N.D. Ga. Oct. 26, 2018) ....................16

*Harnish v. Frankly Co*.,
  2015 WL 1064442 (N.D. Cal. Mar. 11, 2015)........................................................14

*Hashw v. Dep't Stores Nat'l Bank*,
  986 F. Supp. 2d 1058 (D. Minn. 2013)......................................................................5

*Heard v. Nationstar Mortg. LLC*,
  No. 2:16-cv-00694-MHH, 2018 WL 4028116 (N.D. Ala. 2018) ...........................10

*Heinrichs v. Wells Fargo Bank, N.A.*

  2014 WL 2142457 (N.D. Cal. April 15, 2014) .......................................................19

*Hewitt v. Synchrony Bank*,
  No. 17-00874-CV-W-ODS, 2017 WL 6349051 at*3 (W.D. Mo. Dec. 2, 2017).....................6

*Holt v. Facebook, Inc.*,
  240 F. Supp. 3d 1021 (N.D. Cal. 2017) ...............................................................7, 8

*Hudson v. Ralph Lauren Corp*.,
  385 F. Supp. 3d 639 (N.D. Ill. 2019) .................................................................8, 10

*Jiminez v. Credit One Bank, N.A.*,
    377 F. Supp. 3d 324 (S.D.N.Y. 2019) ................................................................2

*Johansen v. Vivant, Inc.*,
    No. 12C7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ................................6

*Jordan v. Nationstar Mortg. LLC*,
    No. 14-CV-00787-WHO, 2014 WL 5359000 (N.D. Cal. Oct. 20, 2014)..............19

*King v. Time Warner Cable, Inc.*,
    894 F.3d 473 (2d Cir. 2018)...............................................................................10

*Knapp-Ellis v. Stellar Recovery, Inc.*,
    No. 2:13-CV-01967-RSM, 2014 WL 5023632 (W.D. Wash. Oct. 8, 2014) ..........14

*Landis v. North Am. Co.*,
    299 U.S. 248 (1936).........................................................................................16

*Larson v. Harman Mgmt. Corp.*,
    No. 1:16-cv-00219-DADSKO, 2018 WL 6459964 (E.D. Cal. Dec. 10, 2018)...........2, 14

*Maes v. Charter Commc'n*,
    345 F. Supp. 3d 1064 (W.D. Wis. 2018) ...........................................................9

*Margulis v. Generation Life Ins. Co.*,
    91 F. Supp. 3d 1165 (E.D. Mo. 2015).................................................................5

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018) ....................................................................1, 9, 14

*Mendez v. Optio Sols., LLC*,
    239 F. Supp. 3d 1229 (S.D. Cal. 2017).............................................................20

*Mussat v. Enclarity, Inc.*,
    No. 16-CV-07643, 2018 WL 1156200 (N.D. Ill. Mar. 5, 2018)............................3

*N. Suburban Chiropractic Clinic, Ltd. v. Merck & Co.*,
    No. 13 C 3113, 2013 WL 5170754 (N.D. Ill. Sept. 13, 2013).............................3

*Nicholson v. REI Energy, LLC*,
    370 F. Supp. 3d 1199 (D. Or. 2019) ............................................................2, 16

*Pendleton v. 1st Fin. Bank, USA*,
    CIV 16–4171, 2017 WL 4012043 (D.S.D. Sept. 11, 2017)...............................20

*Peralta v. Rack Room Shoes, Inc.*,
    No. CV 18-3738, 2018 WL 6331798 (E.D. La. Dec. 3, 2018).............................1

*Petras v. Ocwen Loan Servicing, LLC*,
  No. 5:17-cv-73-Oc-30PRL, 2017 WL 2426846 (M.D. Fla. June 5, 2017)............................21

*Phipps v. FDIC*,
  417 F.3d 1006 (8th Cir. 2005) ...................................................................................................3

*Pieterson v. Wells Fargo Bank, N.A.*,
  No. 17-02306, 2018 WL 3241069 (N.D. Cal. July 2, 2018) ......................................15, 18, 19

*Riazi v. Ally Fin., Inc.*,
  No. 17-1705-JCH, 2017 WL 4269791 (E.D. Mo. Sept. 26, 2017) .........................................16

*Rouse v. Delta Air Lines, Inc.*,
  No. 15-1642, 2015 WL 4636726 (D. Minn. Aug. 4, 2015) ......................................................5

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  18 F.C.C. Rcd. 14014 (2003) ..................................................................................................12

*Shelton v. Nat'l Gas & Elec., LLC*,
  No. CV-17-4063, 2019 WL 1506378 (E.D. Pa. April 5, 2019)................................................6

*Sieleman v. Freedom Mortg. Corp.*,
  No. 17-13110, 2018 WL 3656159 (D. N.J. Aug. 2, 2018) ...............................................17, 19

*Singer v. Las Vegas Athletic Clubs*,
  376 F. Supp. 3d 1062 (D. Nev. 2019).................................................................................2, 16

*Singer v. Las Vegas Athletic Clubs*,
  No. 17-cv-01115, 2019 WL 1338384 (D. Nev. Mar. 25, 2019) ............................................10

*Smith v. Questar Capital Corp.*,
  No. 12-CV-2669, 2013 WL 3990319 (D. Minn. Aug. 2, 2013) ...............................................4

*Somogyi v. Freedom Mortg. Corp.*,
  No. 17-6546, 2018 WL 3656158 (D. N.J. Aug. 2, 2018) .................................................15, 17

*Soular v. N. Tier Energy LP*,
  No. 15-CV-556, 2015 WL 5024786 (D. Minn. Aug. 25, 2015) ...........................................5, 7

*Sw. Bell Tel. Co. v. Allnet Commc'ns Servs., Inc.*,
  789 F. Supp. 302 (E.D. Mo. 1992)..........................................................................................13

*U.S. ex rel. Taylor v. Gabelli*,
  345 F. Supp. 2d 340 (S.D.N.Y. 2004)......................................................................................19

*Torres v. Nat'l Enter. Sys., Inc.*,
  No. 12 C 2267, 2012 WL 3245520 (N.D. Ill. Aug. 7, 2012)................................................5, 6

*Ueckert v. State Farm Bank, F.S.B.*,
No. 17-CV-05094, 2017 WL 3981136 (W.D. Ark. Sept. 11, 2017)................................4, 5, 6

*Union Elec. Co. v. Cable One, Inc.*,
No. 4:11-CV-299 CEJ, 2013 WL 2286055 (E.D. Mo. May 23, 2013)....................................13

*United States. v. Patel*,
778 F.3d 607 (7th Cir. 2015) ................................................................................................11

*United States v. Rolls-Royce Corp.*,
No. 08-cv-133, 2012 WL 12876055 (S.D. Ind. June 4, 2012) ................................................11

*United States v. W. Pac. R. Co.*,
352 U.S. 59 (1956)................................................................................................................13

*Wheeler v. Portfolio Recovery Assoc., LLC*,
No. 5:18-CV-179-DAE, 2019 WL 400114 (W.D. Tex. Jan. 22, 2019).....................................2

*Zean v. Fairview Health Servs.*,
858 F.3d 520 (8th Cir. 2017) ................................................................................................4

## Statutes

47 C.F.R. §64.1200(f)(1) .....................................................................................................2

47 U.S.C. § 227(a) ..............................................................................................................11

47 U.S.C. § 227(a)(1)........................................................................................................7, 10

47 U.S.C. § 227(b)(1) .........................................................................................................2

47 U.S.C. § 227(b)(1)(A)..................................................................................................11, 20

47 U.S.C. § 227(b)(1)(A)(iii)................................................................................................4

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991*...................................................................................................................................17

UCC § 1-201(b)(31)..........................................................................................................12

## Other Authorities

30 FCC Rcd. 7961..............................................................................................................17

Fed. R. Civ. P. 12(b)(6)........................................................................................................3

Black's Law Dictionary (10th ed. 2014)...............................................................................12

## I.     **INTRODUCTION**

Plaintiff Yashtinsky ("Plaintiff") alleges in his complaint that he received unsolicited automated text messages from Defendant Walmart, Inc. ("Defendant" or "Walmart"), which invaded his privacy and caused him to waste time and resources, which is exactly what Congress sought to cure when it enacted the Telephone Consumer Protection Act ("TCPA").  Walmart's Motion to Dismiss argues that Plaintiff did not plausibly allege that Walmart used an Automatic Telephone Dialing System ("ATDS"). because the statute requires that Walmart must have "randomly or sequentially" texted his number.  This assertion is erroneous, however, and Walmart admits that there is no binding precedent in this circuit which compels such a result.  Furthermore, in arguing Plaintiff's allegation are conclusory, Walmart ignores Plaintiff's allegations that Walmart used a tell-tale short code to send this message, and that the content of the message indicates that it is generic and impersonal in nature.  In fact, as Plaintiff was not a customer of the Walmart Pharmacy and had no previous relationship with the Walmart Pharmacy, the text messages, as provided to Plaintiff, were not informational in nature, but spam telemarketing texts identifying a link to Defendant's website.

Walmart's request for a stay should also be denied. In *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), the Ninth Circuit interpreted the TCPA to decide the meaning of ATDS, indicating that defining the term is within the conventional experience of judges and does not involve technical or policy considerations that would place it particularly within the FCC's field of expertise. In fact, since *ACA Int'l v. Fed. Commcn's Comm'n*, 885 F.3d 687 (D.C. Cir. 2018) ("*ACA International*"), the majority of district courts, including the one case deciding the exact issue in this district, have denied to stay proceedings in anticipation of the FCC's guidance on the definition of ATDS. *See e.g., Gould v. Farmers Ins. Exch*., 326 F.R.D. 530, 531 (E.D. Mo.

1

2018) (declining to issue a stay pending FCC ruling on ATDS issue); *Peralta v. Rack Room Shoes, Inc*., No. CV 18-3738, 2018 WL 6331798, at *8-9 (E.D. La. Dec. 3, 2018) (same); *Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324, 337 (S.D.N.Y. 2019) (denying a stay pending FCC ruling on reassigned number liability); *Wheeler v. Portfolio Recovery Assoc., LLC*, No. 5:18-CV-179-DAE, 2019 WL 400114, at *2-3 (W.D. Tex. Jan. 22, 2019) (denying stay pending FCC ruling on ATDS definition); *Singer v. Las Vegas Athletic Clubs,* 376 F. Supp. 3d 1062, 1071 (D. Nev. 2019) (denying stay pending FCC ruling on ATDS issue); *Nicholson v. REI Energy, LLC,* 370 F. Supp. 3d 1199, 1207 (D. Or. 2019) (same); *Larson v. Harman Mgmt. Corp*., No. 1:16-cv-00219-DADSKO, 2018 WL 6459964, at *3-4 (E.D. Cal. Dec. 10, 2018) (same). This Court should do the same.

## II.    SUMMARY OF ALLEGATIONS

Plaintiff has never had any contact or business relationship with Walmart Pharmacy.  Dkt. No. 3, ¶ 24.  Thus, the text messages received by Plaintiff on April 10, 2019, which were generic in nature and included a link to Walmart's website,[1] were an invasion of Plaintiff's privacy, wasted his time, and caused him alarm that a physician may had ordered a prescription for him that he knew nothing about from a pharmacy at which he had never conducted business.  Plaintiff filed a class action Complaint on May 29, 2019, alleging violations of the TCPA. *See generally id*. The TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ("ATDS") or an artificial prerecorded voice…to any

---

[1] The text messages to Plaintiff stated as follows: "WalmartRx – 1of 2 – REPLY NEEDED. TO begin receiving automated messages on your prescriptions, please reply YES. To decline reply STOP" "WalmartRX – 2of2 – Terms & Conditions at Walmart.com/alerterms Msg & data rates may apply. Reply HELP for help, STOP to unenroll."  Dkt. No. 3, ¶ 22.

telephone number assigned to a…cellular telephone service.  47 U.S.C. § 227(b)(1). Specifically, Plaintiff alleged that Walmart sends unauthorized, advertising[2], text messages to Plaintiff and class members and violated their statutory and privacy rights. *See* e.g., Dkt. No. 3, ¶ 1. For these violations, Plaintiff asks for damages, injunctive relief and any other legal or equitable remedies available.

### III.    <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A complaint is plausible if its "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).   Under Fed. R. Civ. P. 12(b)(6), the court must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor.  *Phipps v. FDIC*, 417 F.3d 1006, 1010 (8th Cir. 2005).

---

[2] Defendant argues that the messages to Plaintiff were informational.  Though not an issue to decide on the instant motion to dismiss, Plaintiff allegations are that the text messages received by Walmart are advertisements.  The FCC has defined "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services."  47 C.F.R. §64.1200(f)(1). Important here, a communication need not explicitly mention a commercially available product or service or express an intent by the defendant to market its products or services. *See, e.g., N. Suburban Chiropractic Clinic, Ltd. v. Merck & Co.,* No. 13 C 3113, 2013 WL 5170754, at *4 (N.D. Ill. Sept. 13, 2013) (allegations that a communication was sent as a pretext to market its good and services sufficient to state a claim under the TCPA).  An overt or express offering is simply not required.  *Mussat v. Enclarity, Inc.*, No. 16-CV-07643, 2018 WL 1156200, at *3 (N.D. Ill. Mar. 5, 2018). Here the text messages received by Plaintiff include a hyperlink which redirected to Defendant's Website.  Additionally, Plaintiff alleges that the entire purpose of the text message program offered by Defendant is to increase business.

It is important to note that "[o]n a motion to dismiss, inferences are to be drawn in favor of the non-moving party." *Braden*, 588 F.3d at 595 (citing *Northstar Indus. V. Merril Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009)). Indeed, "*Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice." *Braden*, 588 F.3d at 595 (citing *Iqubal*, 556 U.S. at 663; *Vila v. Inter-Am. Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009); *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009)).  For the purposes of a motion to dismiss, a court must treat it as "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64. However, "[a] motion to dismiss a complaint should not be granted unless it appears beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief." *Smith v. Questar Capital Corp.*, No. 12-CV-2669 SRN/TNL, 2013 WL 3990319, at *2 (D. Minn. Aug. 2, 2013) (citing *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994)).

## IV.     ARGUMENT

### A.  Plaintiff's Pleading for a Claim Under the TCPA is Sufficient

"Recognizing that automated calls are often a nuisance and an invasion of privacy, Congress passed the TCPA to balance individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 522-23 (8th Cir. 2017) (citation and internal quotation omitted). Relevant here, the TCPA makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ..." 47 U.S.C. § 227(b)(1)(A)(iii). "To state a plausible cause of action under the TCPA, [a plaintiff] must allege that: (1) a call was made; (2) the caller used an ATDS or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service;

and (4) the caller did not have prior express consent of the recipient." *Ueckert v. State Farm Bank, F.S.B*., No. 17-CV-05094, 2017 WL 3981136, at *1 (W.D. Ark. Sept. 11, 2017) (citation omitted).

Walmart does not suggest that Plaintiff has not adequately pled that Walmart texted Plaintiff's cellular number, or that the alleged texts were sent without Plaintiff's consent. Walmart only challenges the adequacy of Plaintiff's allegations regarding the second element—the use of an ATDS. Additionally, Walmart argues that Plaintiff's own allegations plead him out of the potential use of an ATDS because the text message was not meant for him.

### 1.     Plaintiff Has Sufficiently Alleged Walmart's Use of an ATDS

Defendant argues Plaintiff failed to sufficiently plead Defendant's alleged use of an ATDS to place text message calls to Plaintiff. Defendant cites a litany of district court decisions in which a TCPA claim was dismissed when the complaint "simply parrots the language of the TCPA." Mot. at 4-5. However, nearly every case cited by Walmart originated in district courts outside the Eighth Circuit and its associated district courts. Yet, district courts within the Eighth Circuit find TCPA complaints sufficient when the plaintiff alleges use of an ATDS and makes supporting factual allegations. *Compare Ueckert*, 2017 WL 3981136, at *2; *Soular v. N. Tier Energy LP*, No. 15-CV-556, 2015 WL 5024786, at *2-3 (D. Minn. Aug. 25, 2015); *Rouse v. Delta Air Lines, Inc*., No. 15-1642, 2015 WL 4636726, at *2-3 (D. Minn. Aug. 4, 2015); *Hashw v. Dep't Stores Nat'l Bank*, 986 F. Supp. 2d 1058, 1060-61 (D. Minn. 2013), with *Margulis v. Generation Life Ins. Co*., 91 F. Supp. 3d 1165, 1167-1168 (E.D. Mo. 2015).

Additionally, some courts have held that a bare allegation that a defendant used an ATDS is enough to survive a motion to dismiss, conceptualizing such allegations as facts rather than threadbare recitals of an element of the cause of action. *See, e.g. Hashw*, 986 F.Supp.2d at 1061 ("Here, Hashw has pleaded that an ATDS was used to make the calls to his cellular phone. As the

Court must accept that allegation as true at this juncture, nothing more is required to state a claim for relief under the TCPA.") (citation omitted); *Soular v. N. Tier Energy LP*, No. 15-CV-556 SRN/LIB, 2015 WL 5024786, at *3 (D. Minn. Aug. 25, 2015) ("Plaintiff's allegation that Defendants used an ATDS to send the text messages at issue is sufficient at this stage of the litigation, when no discovery has been completed."); *Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (plaintiff's allegation that defendant used an ATDS or an artificial or prerecorded voice sufficed to avoid dismissal for failure to state a claim as it would be unreasonable "to hold plaintiffs in TCPA cases to the standard proposed by [the defendant] since it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail"); *Buslepp v. B & B Entm't, LLC*, No. 12-60089-CIV, 2012 WL 1571410, at *1 (S.D. Fla. May 3, 2012) ("the allegation that Defendant used [an ATDS] ... is a factual allegation under *Twombly* and *Iqbal*").

It is also unreasonable to require Plaintiff to plead specific details about the use of an ATDS prior to the benefit of discovery. *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 WL 719762 at *3 (D. N.M. Feb. 20, 2019); *see also Shelton v. Nat'l Gas & Elec., LLC*, No. CV-17-4063, 2019 WL 1506378 at *11 (E.D. Pa. April 5, 2019) (addressing sufficiency of ATDS allegations and stating "we cannot require a plaintiff to make allegations regarding the technical aspects of a device, including the precise level of human intervention needed to make a call, when he or she has no way of knowing those details prior to discovery"); *Hewitt v. Synchrony Bank*, No. 17-00874-CV-W-ODS, 2017 WL 6349051 at *3 (W.D. Mo. Dec. 2, 2017) (finding persuasive the "authority regarding the unreasonableness of requiring Plaintiff to plead specific details about the use of an ATDS prior to the benefit of discovery"); *Johansen v. Vivant, Inc.*, No. 12C7159,

2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) ("We agree that it is unreasonable to require a plaintiff in a TCPA complaint, without the benefit of discovery, to elaborate on the specific technical details of a defendant's alleged ATDS...."); *Torres,* No. 12C2267, 2012 WL 3245520, at *3 (stating "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication...."). As these cases and many others correctly note, it will be Plaintiff's burden at the summary judgment stage to prove Defendant used an ATDS. However, at the motion to dismiss stage, Plaintiff must merely allege the use of an ATDS and make supporting factual allegations. *Ueckert,* 2017 WL 3981136, at *2.

## 2. Additional Factual Allegations in the Complaint are Consistent with Walmart's Use of an ATDS

Plaintiff's Complaint is replete with allegations regarding Walmart's use of an ATDS. For example, Plaintiff alleges the following regarding Walmart's use of an ATDS:

- The impersonal and generic nature of Walmart's text messages, identified in the content of the text messages themselves, demonstrates that Walmart utilized an ATDS in transmitting the messages. (Dkt. No. 3, ¶ 22); and

- Walmart sent the text messages via an ATDS or autodialer as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capability to both (1) store or produce telephone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of telephone numbers, without human intervention. (*Id*., ¶ 26).

In addition, Plaintiff alleges, in detail, the full text of the unsolicited messages, provides the standard five digit "short code" which enabled Walmart to send SMS text messages *en masse*, and that Plaintiff had not provided consent to receive the text message. *Id*. at ¶ 23-25. Accordingly, these facts sufficiently allege that the text messages were sent using an ATDS capable of storing

numbers and sending messages automatically within the meaning of the TCPA.   These types of additional facts distinguish this case from Walmart cited cases and go beyond a mere recitation of the elements of a TCPA claim. Here, Plaintiff easily satisfies the pleading standards under *Twombly*. *See e.g., Soular v. N. Tier Energy LP,* No. 15-CV-556 SRN/LIB, 2015 WL 5024786, at *3 (D. Minn. Aug. 25, 2015)("[T]here are additional facts alleged in the Complaint which indicate the use of an ATDS, such as the generic content of the message, the fact that the messages were sent *en masse* from Defendants' SMS short code, and the fact that the messages were promotional in nature.")

Where a plaintiff receives a text message in the context of having "no reason to be in contact with the defendant," courts may draw support for the inference that an ATDS was used. *Holt v. Facebook, Inc.,* 240 F. Supp. 3d 1021, 1029–30 (N.D. Cal. 2017) (citing *Drew*, 2016 WL 1559717, at *5). Walmart does not argue it had any sort of preexisting relationship with Plaintiff. Rather, Walmart's text messages were "intended for a Walmart pharmacy customer who had enrolled to receive prescription alerts." Mot at 9. The context in which the messages were "received" was, from Plaintiff's point of view, generic text messages related to a prescription he knew nothing about. This is similar to the situation in *Holt*, where Facebook contacted the plaintiff who held a recycled phone number and the court concluded that the plaintiff's allegations were sufficient to find that an ATDS was used. There, the court focused on the plaintiff's perspective and made clear that (i) at the motion to dismiss claim the court is required to construe all inferences in plaintiff's favor, and (ii) "the context factor is stated in terms of whether the Plaintiff has 'reason to be in contact with the Defendant,' not the other way around." *Holt*, 240 F. Supp. at 1030 (citing *Drew v. Lexington Consumer Advocacy, LLC,* No. 16-CV-00200-LB, 2016 WL 1559717, at *5 (N.D. Cal. Apr. 18, 2016)).

As in *Holt*, the context in which Plaintiff received the text messages at issue supports the inference that an ADTS was used. *Id*. The manner in which the texts were sent also support a finding that Walmart used an ATDS. Again, Plaintiff alleges that Walmart used the short code 455-00 to contact Plaintiff. Dkt. No. 3, ¶ 23. Where a plaintiff alleges that the offending messages were sent via SMS short code registered to the defendant, courts may draw support for the inference that an ATDS was used. *Abbas v. Selling Source, LLC*, No. 09 CV 3413, 2009 WL 4884471, at *3 (N.D. Ill. Dec. 14, 2009) (allegations of use of SMS shortcode allowed the inference that defendant used an ATDS to send messages); *Hudson v. Ralph Lauren Corp*., 385 F. Supp. 3d 639, 645 (N.D. Ill. 2019) (same); *Holt*, 240 F. Supp. at 1031 (citing *Harnish v. Frankly Co*., 2015 WL 1064442, at *3 (N.D. Cal. Mar. 11, 2015)). Additionally, "[w]here a plaintiff alleges that other people have also received similar unsolicited text messages, courts may draw support for the inference that an ATDS was used." *Holt*, 240 F. Supp. at 1030. Plaintiff alleges that Walmart has sent unsolicited text messages to thousands of individuals without their consent. Dkt. No. 3, ¶ 33, 45, 51.

### 3. Walmart's Argument that the Statutory Definition of an ATDS Requires a Phone Number to be Randomly or Sequentially Dialed is Erroneous

Contrary to Walmart's arguments, *ACA International* did not answer the central question as to whether a device qualifies as an ATDS only if it can generate random or sequential numbers to be dialed.  Indeed, the D.C. Circuit specifically stated that "[i]t might be permissible ... to adopt either interpretation" in answering that question."  *Gonzalez v. HOSOPO Corp.,* 371 F. Supp. 3d 26, 31 (D. Mass. 2019) citing *ACA International*, 885 F.3d at 703. In fact, as Walmart acknowledges, the Ninth Circuit Court of Appeals recently held that "an ATDS need not be able to use a random or sequential generator to store numbers – it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically." *Marks v. Crunch San*

*Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018); see also *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1156 (9th Cir. 2019).

Other district courts have agreed with *Marks*, rejecting the Third Circuit's findings that an ATDS must have the capacity to generate number randomly or sequentially. *See Gonzalez*, 371 F. Supp.3d at 31 ("equipment need not itself be able to generate random or sequential numbers to qualify as an ATDS under the TCPA"); *Espejo v. Santander Consumer USA, Inc*., No. 11 C 8987, 2019 WL 2450492, at *8 (N.D. Ill. June 12, 2019) ("Given Congress's particular contempt for automated calls and concern for the protection of consumer privacy, the legislative history of the TCPA supports the Ninth Circuit's position that the ATDS definition includes autodialed calls from a pre-existing list of recipients. To hold otherwise would exempt a "widely used" automated dialing technology from the purview of the TCPA, leaving consumers without recourse for the precise problems Congress already addressed."); *see also Maes v. Charter Commc'n*, 345 F. Supp. 3d 1064 (W.D. Wis. 2018) (issued a decision denying the defendant's motion to dismiss, analyzing what qualifies as an ATDS under the TCPA in wake of *ACA International* and finding that the defendant's dialing equipment constituted an ATDS under the TCPA, even when it did not have the capacity to dial random or sequentially generated numbers, as promulgated by prior FCC Orders); *Getz v. DIRECTV, LLC, 359 F. Supp.3d 1222* (S.D. Fla. 2019) (denying a TCPA defendant's motion to dismiss and analyzed the definition of an ATDS under the TCPA in wake of *ACA International* and finding that the equipment used by the defendant constituted an ATDS under the TCPA because it automatically dialed phone numbers from a stored list.); *Singer v. Las Vegas Athletic Clubs*, No. 17-cv-01115, 2019 WL 1338384 (D. Nev. Mar. 25, 2019) (denied the defendant's motion for summary judgment on the same ATDS issue following the ruling in *ACA International*.)

Furthermore, after *ACA International*, courts interpreting the TCPA have found that "to qualify as an ATDS, the defendant need not have deployed the device's capacity to generate telephone numbers randomly or sequentially as long as the device has the present ability to do so." *Hudson v. Ralph Lauren Corp.,* 385 F. Supp. 3d 639, 644 (N.D. Ill. 2019) (citing *Pinkus v. Sirius XM Radio, Inc*., 319 F. Supp.3d 927, 939 (N.D. Ill. 2018)) ("[T]he best reading of 42 U.S.C. § 227(a)(1) requires that an ATDS have the capacity to generate numbers randomly or sequentially and then to dial them, even if that capacity is not deployed for practical reasons."); *see also King v. Time Warner Cable, Inc*., 894 F.3d 473, 479 (2d Cir. 2018) (drawing distinction between "a device that currently has features that enables it to perform the functions of an autodialer – whether or not those features are actually in use during the offending call – and a device that can perform those functions only if additional features are added); *Adams v. Ocwen Loan Servicing, LLC*, 366 F. Supp. 3d 1350, 1356 (S.D. Fla. 2018) (finding allegations of complaint sufficient to plead the ATDS element of a TCPA claim where plaintiff alleged defendant made over 310 calls to plaintiff's cell phone and ignored plaintiffs demands to cease calling); *cf. Heard v. Nationstar Mortg. LLC*, No. 2:16-cv-00694-MHH, 2018 WL 4028116 at *6 (N.D. Ala. 2018) (a debt collection entity "will always make its collection calls with reference to a relatively narrow, predetermined list of telephone numbers [b]ut this fact does not prevent the TCPA from applying to ... predictive collection calls"). Here again, it is unreasonable to require Plaintiff to plead specific details about the capacity of its system prior to the benefit of discovery.

### 4. Dictionary Definitions, Along with FCC and Judicial Usage, Show that Text Messages Like Walmart's Feature "an Artificial or Prerecorded Voice"

Though sufficiently plead, allegations of ATDS are unnecessary as the text messages sent to Plaintiff are analogous to a prerecorded voice made without prior express consent as prohibited

by 47 U.S.C. § 227(b)(1)(A).   Dkt. No. 3, ¶ ¶ 26, 45, 51.[3]   An analysis of the meaning of "prerecorded voice," begins, as it must, with the words themselves. *See United States v. Rolls-Royce Corp.*, No. 08-cv-133, 2012 WL 12876055, at *3 (S.D. Ind. June 4, 2012) (Lawrence, J.) ("When interpreting a statute, the Court begins with the statutory language itself and assumes that the plain meaning, if easily ascertained, adequately expresses the intent of the legislature."). Here, both the statute's text and interpretations of it support a finding that the prepopulated text messages sent *en masse* to Plaintiff and the class members here constitute calls featuring a "prerecorded voice."

First, unlike several other terms in the statute, the TCPA does not define "prerecorded voice."  *See* 47 U.S.C. § 227(a). Accordingly, the Court must ascertain the phrase's "plain and ordinary meaning . . . unless the construction is plainly repugnant to the intent of the legislature." *Am. Land Holdings of Indiana, LLC v. Jobe*, 655 F. Supp. 2d 882, 891 (S.D. Ind. 2009), aff'd, 604 F.3d 451 (7th Cir. 2010). To that end, "[t]o determine the plain meaning of words, [courts] frequently look to dictionary definitions." *United States. v. Patel*, 778 F.3d 607 (7th Cir. 2015). Here, dictionary definitions, supplemented by ordinary examples of usage, support classifying pre-populated text messages as calls featuring a prerecorded voice under the TCPA.

Black's defines a "record" as "[i]nformation that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form. UCC § 1-201(b)(31)." RECORD, Black's Law Dictionary (10th ed. 2014). Likewise, Webster's defines "record" as "to cause (sound, visual images, data, etc.) to be registered on something (such as a

---

[3] Defendant's motion proclaims that Plaintiff's Complaint is "boilerplate" as it contains allegations that text messages were placed "using 'an artificial or prerecorded voice."  Mot. At 2.  However, it is clear Defendant's counsel failed to read the Complaint in its entirety as Plaintiff specifically alleges that the text messages sent to Plaintiff are analogous to a prerecorded voice made without prior express consent.

disc or magnetic tape) in reproducible form." *See* https://www.merriam-webster.com/dictionary/record (last visited on September 10, 2019). "Pre-recorded" therefore, refers to something that is stored in advance of its need and is retrievable, perceivable, reproducible form. *See* http://www.dictionary.com/browse/prerecorded (last visited on September 10, 2019) (defining "prerecorded" as "containing previously recorded information."). And while the word "voice" typically connotes the spoken word, that is not always the case. Webster's, for instance, recognizes voice to include "an instrument or medium of expression," while dictionary.com defines voice to include "expression in spoken or written words, or by other means." http://www.dictionary.com/browse/voice (emphasis added).

Under these definitions, the pre-populated text messages sent *en masse* by Walmart are "prerecorded"—they included information (the text message content) that was logged on a perceivable, reproducible electronic medium. See RECORD, Black's Law Dictionary (10th ed. 2014); https://www.merriam-webster.com/dictionary/record. As such, the pre-populated mass text messages sent by Walmart fit within the common usages of "prerecorded" and "voice."

FCC interpretations and judicial opinions offer further support for this interpretation. The FCC, for its part, has used the words "voice" and "message" interchangeably. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14015 (2003) ("[U]nder the TCPA, it is unlawful to make any call using an [ATDS] or an artificial or prerecorded message to any wireless telephone number.") (emphasis added). Given that usage by the FCC, therefore, any text message call (including those here) that contains message content features a "voice," prerecorded (as here) or otherwise (as would be the case in a traditional, person-to-person SMS conversation).

13

Moreover, the Southern District of California, attempting to explain the scope of the TCPA's prohibitions, defined "artificial or prerecorded voice" by what it wasn't; specifically, the court noted case law and legislative history "differentiat[ing] a call using 'an artificial or prerecorded voice' from a call with a live person." *Chyba v. Bayview Loan Servicing*, LLC, No. 14-cv-1415, 2016 WL 5405557, at *2 (S.D. Cal. Sept. 27, 2016) (collecting authorities); *see also F.T.C. v. Asia Pac. Telecom, Inc.*, 802 F. Supp. 2d 925, 929 (N.D. Ill. 2011) (contrasting "prerecorded messages" with live-agent calls for purposes of telemarketing rule). The messages here fit within that description. Thus, under common parlance, therefore, any telephonic message that is written and saved prior to its automatic distribution is a call featuring a "prerecorded voice."

**B. The Case Should Not be Stayed Under the Primary Jurisdiction Doctrine**

**1.     Courts are competent to define ATDS**

Primary jurisdiction is reserved for a limited set of circumstances that requires "resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Union Elec. Co. v. Cable One, Inc.*, No. 4:11-CV-299 CEJ, 2013 WL 2286055*,* at *1 (E.D. Mo. May 23, 2013) citing *Pimental v. Google, Inc.,* No. C-11-02585-YGR, 2012 WL 1458179, at *2 (N.D. Cal. Apr. 26, 2012).  There is no fixed formula for applying the doctrine of primary jurisdiction. Each case must be evaluated independently to see whether "the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. W. Pac. R. Co*., 352 U.S. 59, 64 (1956). There are two reasons to apply the doctrine: 1) to secure uniformity and consistency in the regulation of businesses entrusted to a particular agency; and 2) to obtain the benefit of the expertise and experience of the particular agency.  *Sw. Bell Tel. Co. v. Allnet Commc'ns Servs., Inc*., 789 F. Supp. 302, 304 (E.D. Mo. 1992).

14

Here, the primary jurisdiction doctrine does not support a stay here for two reasons: First, there is no need for the FCC to weigh in because this Court is competent to rule on the issues Walmart has identified and, indeed, Circuit-level courts have ruled on both issues. Second, any proposed stay would be inefficient and create needless delay.

Walmart asserts that further input from the FCC is necessary because the Third Circuit has taken a different view from *Marks v. Crunch San Diego, LLC*.  But, "such is the case in every developing area of law." *Larson*, 2018 WL 6459964 at *4. "Furthermore, there is no indication, much less a guarantee, that future FCC actions in the form of regulations or otherwise will provide guidance on or resolution of the specific issues before the court in this case." *Id*. In the end, the definition of ATDS is neither a matter of first impression, nor so complicated that it requires FCC expertise to resolve. Thus, the primary jurisdiction doctrine does not support a stay.  *See Harnish v. Frankly Co*., No. 5:14-CV02321-EJD, 2015 WL 1064442, at *3-4 (N.D. Cal. Mar. 11, 2015) (denying motion to stay under primary jurisdiction doctrine pending FCC clarification regarding "the definition and scope of the ATDS" because "this is not an issue of first impression."); *Knapp-Ellis v. Stellar Recovery, Inc*., No. 2:13-CV-01967-RSM, 2014 WL 5023632, at *2-4 (W.D. Wash. Oct. 8, 2014) (declining to apply primary jurisdiction doctrine because, inter alia, the statutory interpretation questions raised in the FCC petitions were not matters of first impression and the defendant did not show "that a decision by the FCC on any of the Petitions is imminent.").

In short, this Court is competent to rule on whether Walmart's dialing system is an ATDS. For one this is demonstrated by the Ninth Circuit's willingness to decide the meaning of that term in *Marks*. *See Larson*, 2018 WL 6459964 at *4 ("The Ninth Circuit's willingness to decide the meaning of an ATDS in *Marks* also indicates that defining that term as used in the applicable statute is within the convention experience of judges and does not involve technical or policy

considerations that would place it particularly within the FCC's field of expertise or discretion");
*Baum v. ADT LLC*, No. CV 18-0777, 2018 WL 5255219, at *6 (W.D. Pa. Oct. 22, 2018) (Deciding
that the "primary jurisdiction is not applicable here [when the crux of the case rests on whether a
device used by defendant is an ATDS under the TCPA] because the issue likely to be presented at
a later time, a legal question of statutory interpretation, is within the conventional experience of
judges.")

Indeed, "[a]s several other courts have recently observed, *ACA International* vacated the
2015 Declaratory Ruling but it did not clearly intend to disturb the FCC's 2003 and 2008 orders."
*Pieterson v. Wells Fargo Bank, N.A.,* No. 17-02306, 2018 WL 3241069, at *3 (N.D. Cal. July 2,
2018); *see also Somogyi v. Freedom Mortg. Corp.,* No. 17-6546, 2018 WL 3656158, at *4 (D. N.J.
Aug. 2, 2018) ("As the Third Circuit recently observed, . . . FCC Orders issued prior to 2015 appear
to have survived whatever criticism was levied by the D.C. Circuit.") (citing *Dominguez v. Yahoo,
Inc.*, 894 F.3d 116 (3d Cir. June 26, 2018)). Moreover, there is ample caselaw interpreting the
definition of the ATDS, which is still good law. *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119
(3d Cir. 2018) ("In light of the D.C. Circuit's holding, we interpret the statutory definition of an
autodialer as we did prior to the issuance of 2015 Declaratory Ruling."); *Somogyi*, 2018 WL
3656158, at *7 (analyzing whether Plaintiff sufficiently alleged the use of an ATDS and
prerecorded and artificial voices after *ACA International* and *Dominguez*).

Given the existing, still-valid FCC orders and caselaw addressing the definition of an ATDS and
the requirements of prior express consent, the issues to be decided by the FCC at some point in the
future will not be ones of first impression, and thus should not result in a stay of this case under
the primary jurisdiction doctrine.

### 2.      A stay does not promote efficiency and would cause needless delay

Further, as with a stay under the Court's inherent authority, "the primary jurisdiction doctrine requires the Court to consider whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Pieterson,* 2018 WL 3241069, at *4 (internal citations and quotation marks omitted).  Thus, considerations of judicial efficiency also counsel against a stay. Following *ACA International*, courts have rejected similar stay requests in part because there is no indication of when the FCC will rule. *See, e.g., Singer,* 376 F. Supp. at 1070 (observing that "[a]side from [defendant's] speculation, there is no indication that a new FCC order is imminent or any assurance that such an order will conclusively resolve the ATDS issue)"; *Grogan v. Aaron's Inc.*, No. 1:18-cv-2821-AT, 2018 WL 6040195, at *8 (N.D. Ga. Oct. 26, 2018) ("While the Court is mindful that a concrete pronouncement from the FCC would prove beneficial in navigating the turbulent waters that lie ahead, neither is the Court willing to stay this matter for what could end up being years.") Any stay would be indefinite because any ruling likely would be once again challenged in the court of appeals. *See Nicholson,* 370 F. Supp. 3d at 1203 (observing "it is unclear when the FCC will issue its ruling" and that a stay "would be indefinite, particularly as that ruling could be subject to further challenge").

### C.  The Case Should Not be Stayed Under Inherent Authority

As to Wal-Mart's alternative request for a stay pursuant to this Court's inherent authority, it is Walmart's heavy burden to establish that such a stay is warranted. *Riazi v. Ally Fin., Inc.*, No. 17-1705-JCH, 2017 WL 4269791, at *3 (E.D. Mo. Sept. 26, 2017) (denying stay of TCPA case pending the D.C. Circuit's ruling in *ACA International*). A stay is only warranted if Walmart establishes "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)). In determining whether to stay a case, the

Court considers "the potential prejudice or hardship to the parties, as well as the interest of judicial economy." *Id.* (internal quotation and citation omitted). Stays of cases are rarely granted because "only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Walmart falls short of establishing its heavy burden that a stay is warranted.

This case should not be stayed because a stay will not simplify the relevant issues and trial of this case. "Since the statutory definition of an ATDS (as opposed to the FCC's interpretation of an ATDS) was not questioned in either *ACA International* or *Dominguez*," it is not necessary to stay this case pending future rules regarding the definition of an ATDS. *Sieleman v. Freedom Mortg. Corp*., No. 17-13110, 2018 WL 3656159, at *4 (D. N.J. Aug. 2, 2018); *see also Somogyi*, 2018 WL 3656158, at *4. Indeed, "[w]hatever guidance the FCC may issue in the future will not alter the statutory definition of an ATDS." *Id.* "In other words, telephone dialing equipment that 'has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator[ ]' qualifies as an ATDS today, just as it will following any future FCC guidance." *Id.* Whether Plaintiff has plausibly alleged that Walmart called him with an ATDS "may be determined by applying the statute and previous FCC guidance that was not changed by *ACA International*" and it is "therefore doubtful that any new guidance issued by the FCC will be dispositive, or even simplify the issues . . ." *Sieleman*, 2018 WL 3656159, at *4.

Further, Walmart ignores the historical timeline of the issuance and implementation of the FCC's previous TCPA orders when it implies the stay will be brief and "not affect a speedy resolution of the matter." Mot. at 15.  For example, the FCC only issued its 2015 order regarding automatic telephone dialing systems in consideration of approximately six years of comments to various public notices. *In re Rules and Regulations Implementing the Telephone Consumer*

18

*Protection Act of 1991*; 30 FCC Rcd. 7961, 8047-48 (Appendix F – identifying the parties who filed comments in response to the FCC's 2009 public notice that was part of the basis for the 2015 order). The 2015 order was then appealed and approximately three years later the Circuit Court of Appeals for the District of Columbia issued its opinion concerning the 2015 order in *ACA International*. Thus, it took years from the time the FCC issued public notices that formed the basis of its 2015 order to the time the D.C. Circuit issued its opinion.

Moreover, the next FCC order is likely to be appealed to the D.C. Circuit. Walmart would inevitably ask this Court to stay the case pending resolution of such an appeal of an FCC order if the order is not favorable to its position in this case.

> The timing of a new order from the FCC is also uncertain. The FCC has expedited the public comment period, but that does not guarantee that an order will be issued in the immediate or near future. This process can take years. And . . . the FCC's order will be subject to further challenge, which is exactly what happened with the 2015 Declaratory Ruling. . . . [T]his cycle of staying a case while an FCC order is pending only to have the FCC order challenged in court has played out before, demonstrating the real possibility of indefinite delay.

*Pieterson*, 2018 WL 3241069, at *5. Granting Walmart's motion to stay the case would indefinitely delay this case.

In fact, only the court to address this issue in the Eight Circuit denied the defendant request for stay. *See Gould v. Farmers Ins. Exch.*, 326 F.R.D. 530 (E.D. Mo. 2018) (declining to issue a stay where "the FCC has not indicated whether it will pursue a formal rulemaking or some other proceeding following the collection of comments on th[e] issue [of what constitutes an ATDS]. [Defendant's] suggestion that a stay would be brief is therefore speculative. It is also possible that any FCC proceeding will fail to determine whether the [] system, as used by the [Defendant's] agents, constitutes an ATDS. If the FCC does proceed with a formal rulemaking, such a process will likely take years and may still fail to resolve the precise issue involved in this case.").

Aside from the above, staying this case would also greatly prejudice the Plaintiff and interfere with his interest in proceeding expeditiously with this lawsuit. *See Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980) ("Any plaintiff in the federal courts enjoys the right to pursue his case and to vindicate his claim expeditiously."). While in some instances a delay in and of itself is not sufficient to show undue prejudice, when there is the potential for a significant delay, as is the case here, this factor should compel denying the request for a stay. As another court recently noted when denying a similar request for a stay in a TCPA case pending future FCC rulings, any stay based on future FCC proceedings "will effectively be indefinite." *Pieterson*, 2018 WL 3241069, at *5. That is so because while "the FCC has expedited the public comment period," "that does not guarantee that an order will be issued in the immediate or near future" as "[t]his process can take years." *Id.*; *see U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 340, 357 (S.D.N.Y. 2004) ("It is well established that '[a]gency decisionmaking often takes a long time and the delay imposes enormous costs on individuals, society, and the legal system.'") (quoting *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 225 (2d Cir. 1995)); *Jordan v. Nationstar Mortg. LLC*, No. 14-CV-00787-WHO, 2014 WL 5359000, at *12 (N.D. Cal. Oct. 20, 2014) (finding that "awaiting a ruling by the FCC would likely involve substantial delay" and "[t]he impact of such delay on the expedient resolution of disputes and the interest of providing certainty to the parties here and to others similarly situated outweigh any potential benefits of deferring to the FCC."); *Abrantes v. Northland Grp., Inc.*, No. 14-CV-05311-YGR, 2015 WL 1738255, at *2 n.3 (N.D. Cal. Apr. 13, 2015) (noting that the court in *Heinrichs v. Wells Fargo Bank, N.A.*, lifted its previously-imposed stay awaiting FCC rulemaking "after determining that the FCC was unable to predict when it might reach a final decision on the petitions.")

Moreover, regardless of what the FCC's future rules may say about the definition of an ATDS, the parties will still need to engage in discovery to determine how Walmart's system actually works in this case to send text messages. *See Sieleman*, 2018 WL 3656159, at *4 n.5 (denying to stay case pending future FCC rulemaking and noting that "factual discovery is necessary to determine whether the particular systems and procedures alleged by Plaintiff, which lie within the literal statutory definition of an ATDS, were actually employed by FMC. Permitting discovery is also consistent with the Second Circuit's recent analysis of the *ACA International* decision, in which the Second Circuit held that the actual capabilities of the alleged dialing equipment must be determined with specificity on a case-by-case basis.") (citing *King v. Time Warner Cable Inc*., 894 F.3d 473, 481 (2d Cir. 2018)); *see also Brandt v. Ocwen Loan Servicing, LLC*, No. 117CV00643DADEPG, 2017 WL 5878581, at *3 (E.D. Cal. Nov. 29, 2017) ("Regardless of how the pending appeal in *ACA International* is decided, the parties here will be required to engage in discovery to determine the type of technology used to make the calls."); *Mendez v. Optio Sols., LLC,* 239 F. Supp. 3d 1229, 1234 (S.D. Cal. 2017) ("Though *ACA International* has the potential to clarify what constitutes an ATDS, and regardless of the authoritative weight of such a clarification, Defendant will still be required to produce discovery to settle the factual disputes regarding its autodialing technology."). This is in addition to all of the other discovery Plaintiff must complete, including discovery regarding Defendant's prior express consent (or lack thereof) to text Plaintiff. Plaintiff should not have to wait to complete this discovery when the scope of this discovery is not impacted by future FCC rulemaking.

### D. As Allegations are that the Text messages are Prerecorded Voice Messages, ACA International Does not Apply

Plaintiff additionally alleges that Walmart's text messages are analogous to a prerecorded voice made without prior express consent as prohibited by 47 U.S.C. § 227(b)(1)(A)". Dkt. No. 3,

¶ 45, 51. Significantly, *ACA International* will not address prerecorded-voice calls, and several district courts have denied stays when plaintiffs alleged both automatic telephone dialing system and artificial- or prerecorded-voice claims. *See, e.g., Anderson v. Credit One Bank, Nat'l Ass'n*, No. 16cv3125, 2017 WL 4654646, at *3 (S.D. Cal. Oct. 17, 2017) (denying stay when plaintiff alleged automatic telephone dialing system and artificial-voice calls because "Plaintiff's TCPA claim will remain even if the D.C. Circuit's ruling impacts the definition of an ATDS"); *Pendleton v. 1st Fin. Bank, USA*, CIV 16–4171, 2017 WL 4012043, at *3 (D.S.D. Sept. 11, 2017) (denying stay because even if ACA International is favorable to defendant, it "will not affect [plaintiff's] additional claim that [defendant] used an artificial or prerecorded voice system"); *Griffin v. Nationstar Mortg. LLC*, No. 3:17-cv-100, 2017 WL 3648981, at *2, (S.D. Miss. Aug. 23, 2017) (denying stay when plaintiff alleged prerecorded-voice claims "since this issue is not presented in ACA International and will not be affected by the outcome of that case"); *Petras v. Ocwen Loan Servicing, LLC*, No. 5:17-cv-73-Oc-30PRL, 2017 WL 2426846, at *1 (M.D. Fla. June 5, 2017) (denying stay because "Plaintiff alleged that Defendant used either an ATDS or an artificial or pre-recorded voice each time it called him. So, even if the D.C. Circuit's ruling impacts the definition of an ATDS, Plaintiff's claims will remain intact and the Parties will still have to engage in discovery.").

## V.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiff requests that the Court deny Defendant's Motion in its entirety, allow his claims to proceed with the remainder of merits and class discovery, and award such further relief as it deems equitable and just.

Dated:  September 30, 2019

*/s/ Joe P. Leniski, Jr.*
Joe P. Leniski, Jr. (TN Bar No. 22891)
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203

(615) 254-8801
joeyl@bsjfirm.com

James Albert Streett
Streett Law Firm P.A.
P.O. Box 650
107 West Main
Russellville, AR 72811
(479) 968-2030
Fax: (479) 968-6253
Email: james@streettlaw.com

**LAW OFFICES OF RONALD A. MARRON**
Ronald A. Marron (*Admitted Pro Hac Vice*)
ron@consumersadvocates.com
Alexis M. Wood (*Admitted Pro Hac Vice*)
alexis@consumersadvocates.com
Kas L. Gallucci (*Admitted Pro Hac Vice*)
kas@consumersadvocates.com
651 Arroyo Drive
San Diego, CA  92103
Tel: (619) 696-9006
Fax: (619) 564-6665


*Attorneys for Plaintiff and the Proposed Class*


<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on September 30, 2019 a copy of the above document

has been served upon the following persons by through the Court's ECF noticing system.

*/s/ Joe P. Leniski, Jr.*
Joe P. Leniski, Jr. (TN Bar No. 22891)
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
(615) 254-8801
joeyl@bsjfirm.com

*Attorneys for Plaintiff and the Proposed Class*

23