### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

| | |
|---|---|
| KEVIN YASHTINSKY,<br><br>_Plaintiff_,<br>v.<br><br>WALMART, INC.,<br><br>_Defendant_. | Case No. 5:19-CV-05105-TLB |

### REPLY IN SUPPORT OF DEFENDANT WALMART INC.'S
### <u>MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THE ACTION</u>

Karen P. Freeman
Ark. Bar No. 2009094
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive, Suite 200
Rogers, AR 72758
(479) 464-5682 Phone
(479) 464-5680 Fax
kfreeman@mwlaw.com

Meredith C. Slawe (_pro hac vice_)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103
(215) 965-1202 Phone
(215) 965-1210 Fax
mslawe@akingump.com

_Attorneys for Defendant Walmart Inc._

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     ARGUMENT .....................................................................................................2

        A.      Plaintiff's Claim Should Be Dismissed for Lack of Standing ................................2

        B.      Plaintiff's Response Confirms That He Cannot Plausibly Allege Use of an
                ATDS ........................................................................................................................3

        C.      Plaintiff's Reliance on the Ninth Circuit's Marks Decision is Misplaced..............4

        D.      The TCPA's Provision Related to Use of an Artificial or Prerecorded
                Voice Does Not Apply to Text Messages.................................................................6

        E.      Plaintiff Has Failed to Refute Walmart's Showing That a Stay is
                Warranted..................................................................................................................8

III.    CONCLUSION...................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACA Int'l v. FCC*,
   885 F.3d 687 (D.C. Cir. 2018) .........................................................................6, 7, 8

*Am. Land Holdings of Ind., LLC v. Jobe*,
   655 F. Supp. 2d 882 (S.D. Ind. 2009) ...................................................................7

*Bader v. Navient Sols., LLC*,
   No. 18-1367, 2019 U.S. Dist. LEXIS 100396 (N.D. Ill. June 14, 2019) ................10

*Buhr v. ADT, Inc.*,
   No. 18-80605 (S.D. Fla. July 25, 2018) ...............................................................12

*Chyba v. Bayview Loan Servicing, LLC*,
   No. 14-01415, 2016 U.S. Dist. LEXIS 133849 (S.D. Cal. Sept. 27, 2016)............7

*Daniels v. ComUnity Lending, Inc.*,
   No. 13-0488, 2015 U.S. Dist. LEXIS 16196 (S.D. Cal. Feb. 9, 2015) ....................4

*Despot v. Allied Interstate, Inc.*,
   No. 15-0015, 2016 U.S. Dist. LEXIS 118646 (W.D. Pa. Sept. 2, 2016).................4

*Dominguez v. Yahoo, Inc.*,
   894 F.3d 116 (3d Cir. 2018)...........................................................3, 5, 6, 8, 9

*Fleming v. Associated Credit Servs.*,
   342 F. Supp. 3d 563 (D.N.J. 2018) ...............................................................5, 10

*Folkerts v. Seterus, Inc.*,
   No. 17-4171, 2019 U.S. Dist. LEXIS 42347 (N.D. Ill. Mar. 15, 2019)...................10

*FTC v. Asia Pac. Telecom, Inc.*,
   802 F. Supp. 2d 925 (N.D. Ill. 2011) ....................................................................7

*Gadelhak v. AT&T Services, Inc.*,
   No. 19-1738 (7th Cir.) ........................................................................................11

*Gadelhak v. AT&T Servs.*,
   No. 17-01559, 2019 U.S. Dist. LEXIS 55200 (N.D. Ill. Mar. 29, 2019)..................9

*Gary v. TrueBlue, Inc.*,
   No. 17-10544, 2018 U.S. Dist. LEXIS 128782 (E.D. Mich. Aug. 1, 2018)............5

*Glauser v. GroupMe, Inc.*,
   No. 11-02584, 2015 U.S. Dist. LEXIS 14001 (N.D. Cal. Feb. 4, 2015) ..................................7

*Golan v. FreeEats.com, Inc.*,
   930 F.3d 950 (8th Cir. 2019) ..................................................................................................7

*Gould v. Farmers Ins. Exch.*,
   326 F.R.D. 530 (E.D. Mo. 2018) ..........................................................................................11

*Johnson v. Capital One Servs., LLC*,
   No. 18-62058, 2019 U.S. Dist. LEXIS 159633 (S.D. Fla. Sept. 19, 2019) ..............................5

*Johnson v. Yahoo!, Inc.*,
   346 F. Supp. 3d 1159 (N.D. Ill. 2018) ..................................................................................10

*Keyes v. Ocwen Loan Servicing, LLC*,
   335 F. Supp. 3d 951 (E.D. Mich. 2018)............................................................................5, 10

*King v. Time Warner Cable Inc.*,
   894 F.3d 473 (2d Cir. 2018)...........................................................................................6, 8, 9

*Kloth-Zanard v. Bank of Am.*,
   15-1208, 2019 U.S. Dist. LEXIS 72425 (D. Conn. Apr. 30, 2019)...........................................5

*Larson v. Harman Mgmt. Corp.*,
   No. 16-00219, 2018 U.S. Dist. LEXIS 208121 (E.D. Cal. Dec. 10, 2018) ..............................8

*Lord v. Kisling, Nestico & Redick, LLC*,
   No. 17-01739, 2018 U.S. Dist. LEXIS 116288 (N.D. Ohio July 12, 2018) ..............................5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................................2

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018) ............................................................................................4, 9

*Meeks v. Buffalo Wild Wings, Inc.*,
   No. 18-2673, 2018 U.S. Dist. LEXIS 225746 (C.D. Cal. Apr. 13, 2018) ................................3

*Pinkus v. Sirius XM Radio, Inc.*,
   319 F. Supp. 3d 927 (N.D. Ill. 2018) ................................................................................5, 10

*Raines v. Byrd*,
   521 U.S. 811 (1997)................................................................................................................2

*Reed v. Quicken Loans, Inc.*,
   No. 18-3377, 2019 U.S. Dist. LEXIS 159935 (N.D. Tex. Sept. 3, 2019),
   *adopted by* 2019 U.S. Dist. LEXIS 159337 (N.D. Tex., Sept. 18, 2019)..................................5

*Roark v. Credit One Bank, N.A.*,
   No. 16-00173, 2018 U.S. Dist. LEXIS 193252 (D. Minn. Nov. 13, 2018) .....................4, 7, 9

*Salcedo v. Hanna*,
   936 F.3d 1162 (11th Cir. 2019) ...........................................................................................2, 3

*Secure v. Ultimate Fitness Grp., LLC*,
   18-20483, 2019 U.S. Dist. LEXIS 45194 (S.D. Fla. Mar. 18, 2019).......................................11

*Sieleman v. Freedom Mortg. Corp.*,
   No. 17-13110, 2018 U.S. Dist. LEXIS 129698 (D.N.J. Aug. 2, 2018) ...................................11

*Snow v. GE*,
   No. 18-0511, 2019 U.S. Dist. LEXIS 99760 (E.D.N.C. June 14, 2019) ...................................3

*Somogyi v. Freedom Mortg. Corp.*,
   No. 17-06546, 2018 U.S. Dist. LEXIS 129697 (D.N.J. Aug. 2, 2018) ...................................11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..............................................................................................................2

*Thomas v. Abercrombie & Fitch*,
   No. 16-11467 (E.D. Mich. June 19, 2018)...............................................................................12

*Thompson-Harbach v. USAA Fed. Sav. Bank*,
   359 F. Supp. 3d 606 (N.D. Iowa 2019)...................................................................................4, 9

*Trumper v. GE Capital Retail Bank*,
   79 F. Supp. 3d 511 (D.N.J 2014) ...............................................................................................4

*Warth v. Seldin*,
   422 U.S. 490 (1975)...................................................................................................................2

*Yates v. Checkers Drive-In Rests, Inc.*,
   No. 17-9219, 2019 U.S. Dist. LEXIS 55103 (N.D. Ill. Apr. 1, 2019) ....................................10

*Ybarra v. Dish Network, L.L.C.*,
   807 F.3d 635 (5th Cir. 2015) .................................................................................................6, 7

*Zean v. Fairview Health Servs.*,
   858 F.3d 520 (8th Cir. 2017) .....................................................................................................7

*Zeidel v. Nat'l Gas & Elec., Ltd. Liab. Co.*,
   No. 18-06792, 2019 U.S. Dist. LEXIS 83988 (N.D. Ill. May 17, 2019)................................10

**Regulatory Authorities**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd. 559 (2008)...................................9

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003)..................................9

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
    Declaratory Ruling and Order, 30 FCC Rcd. 7961 (2015) ......................................................1

**Statutes and Rules**

47 U.S.C. § 227........................................................................................................................4, 6, 8

Fed. R. Civ. P. 12.............................................................................................................................2

**Other Authorities**

Public Notice, CG Docket Nos. 18-152, 02-278 (May 14, 2018)
    https://www.fcc.gov/document/cgb-seeks-comment-tcpa-light-dc-circuit-
    decision-aca-intl ..............................................................................................................11

*Remarks of FCC Commissioner Michael O'Rielly Before the ACA International Washington Insights Conference* (May 16, 2019),
    https://www.fcc.gov/document/orielly-remarks-aca-intl-washington-insights-
    conference ...............................................................................................................10, 11

Defendant Walmart Inc. ("Walmart") respectfully submits this Reply in Support of its Motion to Dismiss or, in the Alternative, to Stay the Action.

## I.   <u>INTRODUCTION</u>

Plaintiff Kevin Yashtinsky ("Plaintiff") claims that he received a single informational text message that was intended for a specific Walmart customer as part of Walmart Pharmacy's prescription notification text messaging program ("Prescription Messaging Program").[1]  These allegations cannot support a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") for two independent reasons.  ***First***, Plaintiff has not suffered a concrete injury and thus lacks standing under Article III to bring such a claim.  ***Second***, as numerous courts addressing this issue have held, targeted text messages cannot support a TCPA claim because they do not support an inference that they were sent using an automated telephone dialing system ("ATDS").  Plaintiff relies on an interpretation of ATDS that is inconsistent with the text of the statute and that has been widely rejected by courts in this district and across the country.  Furthermore, in a tacit admission that an ATDS was not used, Plaintiff argues that a text message somehow qualifies as a prerecorded ***voice*** call under the TCPA.  ***It does not***.[2]  Plaintiff's Complaint should be dismissed with prejudice.

In the alternative, should this Court find it more prudent to await guidance from the Federal Communications Commission ("FCC") regarding the definition of an ATDS, then a stay is warranted under both the primary jurisdiction doctrine and the Court's inherent authority.

---

[1]     In his Response, Plaintiff seems confused as he repeatedly refers to "messages," when he has alleged a single text message.  *See* Compl. ¶ 21 (alleging receipt of a single text message on April 10, 2019).  Furthermore, to the extent Plaintiff now argues that the single text message at issue was an advertisement, (*see* Resp. at 3 n.2), the text speaks for itself, and it is plainly an informational message intended for a Walmart Pharmacy customer who had opted to enroll in Walmart's Prescription Messaging Program, *see* Compl. ¶¶ 22, 24.

[2]     It is this type of strained argument that has earned the TCPA a reputation as "the poster child for lawsuit abuse."  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961, 8073 (2015) (Now-Chairman Pai, dissenting).

## II.   ARGUMENT

### A.   Plaintiff's Claim Should Be Dismissed for Lack of Standing

"Not every right created by Congress or defined by an executive agency is automatically enforceable in the federal courts."  *Salcedo v. Hanna*, 936 F.3d 1162, 1166 (11th Cir. 2019). Rather, pursuant to Article III of the United States Constitution, the jurisdiction of the courts is limited "to actual cases or controversies."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  This constitutional limit is enforced through the doctrine of standing.  *See id.*  "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  *Id.*  As the United States Supreme Court has explained, "the 'irreducible constitutional minimum' of standing consists of three elements": "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)).  A challenge to standing may be raised at any time, and the plaintiff bears the burden of proving that all elements of standing exist at every stage during the litigation.  *See* Fed. R. Civ. P. 12(h)(3); *Lujan*, 504 U.S. at 561. (citation omitted).   "[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Plaintiff has failed to plead such facts.  Rather, he has generally alleged "aggravation, nuisance, and invasion of privacy" from receipt of a single informational text message.  *See* Compl. ¶ 3. But, as the United States Court of Appeals for the Eleventh Circuit recently explained, a single unwanted text message "is precisely the kind of fleeting infraction upon personal property that tort law has resisted addressing."  *Salcedo*, 936 F.3d at 1172.  In *Salcedo*, the Eleventh Circuit

2

considered a case that, like here, involved the receipt of a single text message.[3]  *See id.* at 1165.

After reviewing the legislative history, the purposes of the TCPA, and traditional notions of tort,

the court dismissed the claim, concluding that "[t]he chirp, buzz, or blink of a cell phone receiving

a single text message is more akin to walking down a busy sidewalk and having a flyer briefly

waived in one's face.  Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal

courts."  *Id.* at 1172.  The same result is warranted here.  Plaintiff's allegations "do not state a

concrete harm that meets the injury-in-fact requirement of Article III."  *Id.*  Accordingly, his claim

should be dismissed for lack of standing.

### B.     Plaintiff's Response Confirms That He Cannot Plausibly Allege Use of an ATDS

Plaintiff argues that his "Complaint is replete with allegations regarding Walmart's use of

an ATDS."  Resp. at 7.  Although Plaintiff makes this ***legal conclusion*** in his Complaint, he does

not plead ***facts*** to support it.  Rather, he concedes that he allegedly received a single text message

intended for a subscriber of Walmart's Prescription Messaging Program.  *See* Compl. ¶¶ 21–24.

That allegation forecloses a finding that the text reached Plaintiff because of random or sequential

number generation.  *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018) (finding

TCPA does not apply where text messages were sent to targeted user, rather than because of

random number generation); *Snow v. GE*, No. 18-0511, 2019 U.S. Dist. LEXIS 99760, at *11

(E.D.N.C. June 14, 2019) (dismissing TCPA claim with prejudice where facts alleged showed

plaintiff was unintended recipient of targeted text messages); *Meeks v. Buffalo Wild Wings, Inc.*,

No. 18-2673, 2018 U.S. Dist. LEXIS 225746, at *9–10 (C.D. Cal. Apr. 13, 2018) ("Where . . . a

plaintiff's own allegations suggest direct targeting that is inconsistent with the sort of random or

sequential number generation required for an ATDS, courts conclude that the allegations are

---

[3]     Unlike the informational text message at issue here, the text message in *Salcedo* advertised the services of a law firm.  *See Salcedo*, 936 F.3d at 1165.

insufficient to state a claim for relief under the TCPA." (quotation marks and citations omitted));
*Despot v. Allied Interstate, Inc.*, No. 15-0015, 2016 U.S. Dist. LEXIS 118646, at *17 (W.D. Pa.
Sept. 2, 2016) ("[T]he calls were not random or sequential because they were made to Plaintiff.");
*Daniels v. ComUnity Lending, Inc.*, No. 13-0488, 2015 U.S. Dist. LEXIS 16196, at *20–21 (S.D.
Cal. Feb. 9, 2015) (dismissing a TCPA claim with prejudice and stating that the "alleged calls to
Plaintiffs do not appear to have been 'random,' 47 U.S.C. § 227(a)(1); instead, the calls are alleged
to be directed specifically toward Plaintiffs" (quotation marks and citations omitted)); *Trumper v.
GE Capital Retail Bank*, 79 F. Supp. 3d 511 (D.N.J 2014) (dismissing TCPA claim because the
"[c]omplaint takes the position that the calls were placed using an [ATDS]—a random or
sequential number generator—[but] it appears that the calls were directed at [another account
holder]"). Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

**C.      Plaintiff's Reliance on the Ninth Circuit's *Marks* Decision is Misplaced**

Plaintiff asks this Court to follow *Marks*[4] to excise the words "using a random or sequential
number generator" from the statutory text. 47 U.S.C. § 227. Although Plaintiff argues that
"[o]ther district courts have agreed with *Marks*," (Resp. at 10), he does not and cannot refute the
fact that *Marks* has been rejected by most courts, including those in this circuit. Indeed, the
majority of courts across the country to consider the issue have held that, contrary to *Marks*, an
ATDS must have the capacity for random or sequential number generation. *See, e.g.*, *Thompson-
Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 626 (N.D. Iowa 2019) ("[T]his Court finds
the *Marks* court's decision erroneous as a matter of statutory construction."); *Roark v. Credit One
Bank, N.A.*, No. 16-00173, 2018 U.S. Dist. LEXIS 193252, at *7 (D. Minn. Nov. 13, 2018)
(rejecting *Marks* and holding that "the correct inquiry is whether a device can generate numbers

---

4       *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).

to dial either randomly or sequentially"); *Johnson v. Capital One Servs., LLC*, No. 18-62058, 2019 U.S. Dist. LEXIS 159633, at *9–10 (S.D. Fla. Sept. 19, 2019) ("[T]o fall within the definition of an ATDS under the TCPA, the equipment used must have the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial the stored numbers."); *Reed v. Quicken Loans, Inc.*, No. 18-3377, 2019 U.S. Dist. LEXIS 159935, at *6 (N.D. Tex. Sept. 3, 2019), *adopted by* 2019 U.S. Dist. LEXIS 159337 (N.D. Tex., Sept. 18, 2019) (dismissing TCPA claim where "Plaintiff aver[red] the text messages were 'automated'" but he did "not plead that the text messages or phone calls were 'placed with an ATDS that randomly or sequentially generated his number'"); *Kloth-Zanard v. Bank of Am.*, 15-1208, 2019 U.S. Dist. LEXIS 72425, at *27 (D. Conn. Apr. 30, 2019) (holding that random or sequential number generation is a required feature of an ATDS); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 963 (E.D. Mich. 2018) ("[A] device must be able to call and generate numbers randomly or sequentially to qualify as an ATDS."); *Fleming v. Associated Credit Servs.*, 342 F. Supp. 3d 563, 577 (D.N.J. 2018) (same); *Gary v. TrueBlue, Inc.*, No. 17-10544, 2018 U.S. Dist. LEXIS 128782, at *19 (E.D. Mich. Aug. 1, 2018) ("The statute never mentions a capacity to dial from a set list."); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 939 (N.D. Ill. 2018) (holding that an ATDS must have the capacity for random or sequential number generation); *Lord v. Kisling, Nestico & Redick, LLC*, No. 17-01739, 2018 U.S. Dist. LEXIS 116288, at *6 (N.D. Ohio July 12, 2018) (same).

Moreover, the Second, Third, and D.C. Circuits have all concluded that random or sequential number generation is a required feature of an ATDS.  *See Dominguez*, 894 F.3d at 121 (affirming grant of summary judgment where plaintiff failed to adduce any evidence the system used to send text messages "had the present capacity to function as an autodialer by generating

random or sequential telephone numbers and dialing those numbers"); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 479 n.5 (2d Cir. 2018) (noting that its decision as to the ATDS definition was "essentially the same" as the Third Circuit's in *Dominguez*); *ACA Int'l v. FCC*, 885 F.3d 687, 702 (D.C. Cir. 2018) ("'[D]ialing random or sequential numbers' cannot simply mean dialing from a set list of numbers in random or other sequential order: if that were so, there would be no difference between 'dialing random or sequential numbers' and 'dialing a set list of numbers.").

The statute plainly states that "[t]he term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, ***using a random or sequential number generator***; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). Where a text message is sent to a specific, targeted individual, it is not the result of random or sequential number generation and cannot support a TCPA claim. *See Dominguez*, 894 F.3d at 121; *see also* Section II.B, *supra*.

**D.     The TCPA's Provision Related to Use of an Artificial or Prerecorded Voice Does Not Apply to Text Messages**

Perhaps recognizing that his claim can only proceed if this Court adopts a widely rejected, expansive interpretation of the TCPA that is plainly at odds with the statutory text and *ACA International*, Plaintiff makes a nonsensical argument that the single informational written text message he purportedly received should somehow be considered a prerecorded ***voice*** call. *See* Resp. at 11. But, a text message is not a "prerecorded voice" call under the TCPA. *See Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015) ("To be liable under the 'artificial or prerecorded voice' section of the TCPA, . . . a defendant must make a call and ***an artificial or prerecorded voice must actually play***." (emphasis added)). A text is not a ***voice*** call; therefore, it

does not implicate the separate "prerecorded *voice*" provisions.[5]  *See Glauser v. GroupMe, Inc.*, No. 11-02584, 2015 U.S. Dist. LEXIS 14001, at *20–21 (N.D. Cal. Feb. 4, 2015) (rejecting plaintiff's argument "that the Welcome Texts were 'artificial, prewritten text messages,' and thus constitute an 'artificial or prerecorded voice'").

As Plaintiff acknowledges, "the word 'voice' typically connotes the *spoken* word."  *See* Resp. at 13 (emphasis added).  And rules of statutory interpretation require courts to give undefined terms their "plain and ordinary" meaning.  *See id.* at 12 (citing *Am. Land Holdings of Ind., LLC v. Jobe*, 655 F. Supp. 2d 882, 891 (S.D. Ind. 2009)).  The plain and ordinary meaning of a call made with a "prerecorded voice" requires that "the prerecorded voice must *'speak'* during the call." *Ybarra*, 807 F.3d at 641 (emphasis added); *see also, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) (involving allegations that defendants violated the TCPA by making *voice* calls that featured a prerecorded voice); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 522 (8th Cir. 2017) (same); *Roark*, 2018 U.S. Dist. LEXIS 193252, at *9 (same).

In addition, were this Court to accept Plaintiff's suggestion that a standard written text message is a prerecorded voice call, then the statute would potentially reach every text message ever sent—including those sent by typical users of standard smart phones.  Such "an eye-popping sweep" has already been rejected in *ACA International*.  885 F.3d at 697.  This Court should follow the plain language of the statute and reject Plaintiff's improper attempt to expand its reach.

---

[5]     Indeed, Plaintiff does not cite a single case in which any court has ever held that a text message is a prerecorded voice under the TCPA.  And, the two cases on which Plaintiff relies to support his theory involved voice calls, not text messages.  *See Chyba v. Bayview Loan Servicing, LLC*, No. 14-01415, 2016 U.S. Dist. LEXIS 133849, at *2 (S.D. Cal. Sept. 27, 2016) (involving allegations of voice phone calls); *FTC v. Asia Pac. Telecom, Inc.*, 802 F. Supp. 2d 925, 927 (N.D. Ill. 2011) (considering various provisions of FTC regulations pertaining to voice calls in a case that had nothing to do with the TCPA).

**E.      Plaintiff Has Failed to Refute Walmart's Showing That a Stay is Warranted**

As set forth in Walmart's opening brief—and as confirmed here—there is no ambiguity in the statutory language, and the overwhelming precedent makes clear that dismissal of Plaintiff's claim is warranted.  *See* Def.'s Mem. of Law in Supp. of Mot. to Dismiss or Stay at 10 [hereinafter Def.'s Mot.]; *infra*, Sections II.A–II.D.  Should this Court determine that it is more prudent to await the FCC's impending ruling regarding the definition of an ATDS, however, the Court should stay this Action.  Plaintiff's arguments to the contrary are misplaced for several reasons.

*First*, despite recognizing that invocation of the primary jurisdiction doctrine is appropriate "to secure uniformity and consistency in the regulation of businesses entrusted to a particular agency," like the FCC, Plaintiff argues that the doctrine is inapplicable here.  Resp. at 14.  As Plaintiff acknowledges, inconsistent rulings are precisely what has resulted in the wake of *ACA International*.  *See id*. at 15.  While Plaintiff dismissively suggests that inconsistent rulings are "the case in every developing area of law," (*see id.* (citing *Larson v. Harman Mgmt. Corp.*, No. 16-00219, 2018 U.S. Dist. LEXIS 208121, at *11 (E.D. Cal. Dec. 10, 2018))), he does not dispute the fact that businesses seeking to comply with the TCPA and FCC regulations do not have clear guidance on what the law requires of them when providing their customers with requested, valuable communications by text.[6]  *Compare, e.g.*, 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' means equipment which has the capacity—(A) to store or produce telephone numbers to be called, ***using a random or sequential number generator***; and (B) to dial such numbers." (emphasis added)), *and Dominguez*, 894 F.3d at 121 (explaining that an ATDS must have the present capacity for "***generating random or sequential telephone numbers***" (emphasis added)), *and King*, 894 F.3d at 479 n.5 (same), *and ACA Int'l*, 885 F.3d at 402

---

[6]      The district court in *Larson* is within the Ninth Circuit and thus bound by the *Marks* decision.  *See* 2018 U.S. Dist. LEXIS 208121, at *11–12.

("'[D]ialing random or sequential numbers' cannot simply mean dialing from a set list of numbers in random or other sequential order: if that were so, there would be no difference between 'dialing random or sequential numbers' and 'dialing a set list of numbers."), *with Marks*, 904 F.3d at 1052 ("[W]e conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator.'").  It is precisely for this reason that a stay pursuant to the primary jurisdiction doctrine is appropriate here.

    *Second*, contrary to Plaintiff's contention that the FCC's 2003 Order[7] and 2008 Declaratory Ruling[8] are still valid, every Circuit court to address the issue—including *Marks*—and the majority of district courts, have concluded that *ACA International* necessarily vacated these orders insofar as they sought to interpret the meaning of an ATDS.  *See, e.g.*, *King*, 894 F.3d at 477 (finding that *ACA International* "removed any deference [courts] might owe to the views the FCC expressed" regarding "the 'capacity' a device must have in order to qualify as an ATDS under the TCPA"); *Marks*, 904 F.3d at 1049 ("[W]e conclude that the FCC's prior orders on that issue [the definition of ATDS] are no longer binding on us."); *Dominguez*, 894 F.3d at 119 (interpreting the statutory language of the definition of ATDS without deference to any FCC interpretation); *Roark*, 2018 U.S. Dist. LEXIS 193252, at *6 (explaining *ACA International* vacated 2003 and 2008 FCC rulings); *Thompson-Harbach*, 359 F. Supp. 3d at 621 ("[T]he *ACA International* holding necessarily invalidated the FCC's 2003 Order and 2008 Declaratory Ruling insofar as the 2003 Order and 2008 Declaratory Ruling also define a predictive dialer as an ATDS."); *Gadelhak v. AT&T Servs.*, No. 17-01559, 2019 U.S. Dist. LEXIS 55200, at *13 (N.D. Ill. Mar. 29, 2019) ("*ACA*

---

[7]    *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

[8]    *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling, 23 FCC Rcd. 559 (2008).

*International* invalidated the Commission's understanding of the term ATDS as articulated in the 2015 Declaratory Ruling, as well as the 2008 Declaratory Ruling and the 2003 Order."); *Pinkus*, 319 F. Supp. 3d at 932 ("*ACA International* invalidated not only the 2015 Declaratory Ruling's interpretation of the statutory term ATDS, but also the 2008 Declaratory Ruling's and 2003 Order's interpretation of that term."); *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1161 (N.D. Ill. 2018) ("[T]he court set aside the agency's 'treatment' of the qualifying functions of an ATDS, and it wiped the slate clean." (internal citations omitted)); *Keyes*, 335 F. Supp. 3d at 962 n.5 (finding *ACA International* invalidated all prior FCC pronouncements regarding the required functions of an ATDS); *Bader v. Navient Sols., LLC*, No. 18-1367, 2019 U.S. Dist. LEXIS 100396, at *4 (N.D. Ill. June 14, 2019) (applying statutory definition of ATDS without deference to FCC interpretation); *Zeidel v. Nat'l Gas & Elec., Ltd. Liab. Co.*, No. 18-06792, 2019 U.S. Dist. LEXIS 83988, at *3 (N.D. Ill. May 17, 2019) (same); *Yates v. Checkers Drive-In Rests, Inc.*, No. 17-9219, 2019 U.S. Dist. LEXIS 55103, at *5 (N.D. Ill. Apr. 1, 2019) (same); *Folkerts v. Seterus, Inc.*, No. 17-4171, 2019 U.S. Dist. LEXIS 42347, at *18 (N.D. Ill. Mar. 15, 2019) (same); *Fleming*, 342 F. Supp. 3d at 575 (finding that "*ACA International* necessarily invalidated the 2003 Order and 2008 Declaratory Ruling"). Accordingly, to the extent that Plaintiff suggests the primary jurisdiction doctrine is inappropriate because the Court can simply rely on these overturned orders, he is mistaken.

  **Third**, Plaintiff's suggestion that it could be years before the FCC issues a ruling regarding the definition of an ATDS is belied by the remarks of FCC Commissioner Michael O'Rielly that the FCC "is not sitting on its hands" in resolving this issue. *Remarks of FCC Commissioner Michael O'Rielly Before the ACA International Washington Insights Conference* at 2–3 (May 16, 2019), https://www.fcc.gov/document/orielly-remarks-aca-intl-washington-insights-conference

("O'Rielly Comments").  The FCC's ruling is expected imminently.  Moreover, the single case from within this circuit on which Plaintiff relies was decided before the Ninth Circuit's opinion in *Marks*, which created a circuit split.[9]  *See generally Gould v. Farmers Ins. Exch.*, 326 F.R.D. 530, 531 (E.D. Mo. 2018) (issuing ruling prior to *Marks*).  And, at any rate, this Court can certainly manage its docket through periodic status updates.

**Fourth**, Plaintiff's contention that "a stay will not simplify the relevant issues" is based entirely on two related cases decided on the same day by a single judge in the District of New Jersey who concluded that "previous FCC guidance . . . was not changed by *ACA International*." *Sieleman v. Freedom Mortg. Corp.*, No. 17-13110, 2018 U.S. Dist. LEXIS 129698, at *10 (D.N.J. Aug. 2, 2018); *Somogyi v. Freedom Mortg. Corp.*, No. 17-06546, 2018 U.S. Dist. LEXIS 129697, at *12 (D.N.J. Aug. 2, 2018).  That conclusion, however, is contrary to the weight of the law.  *See supra* (collecting cases that held *ACA International* vacated all prior FCC rulings regarding the required functions of an ATDS); *see also* O'Rielly Comments, *supra* (explaining that the FCC is aware of the "patchwork of interpretations by both federal circuit and district courts [that] flowed in response [to *ACA Int'l*], including those that illogically found the FCC's 2003 and 2008 orders defining an ATDS to be controlling post-*ACA*").  Indeed, as Walmart has previously explained, the FCC's impending guidance will likely resolve the ATDS circuit split.  *See* Public Notice at 1–3, CG Docket Nos. 18-152, 02-278, https://www.fcc.gov/document/cgb-seeks-comment-tcpa-light-dc-circuit-decision-aca-intl (May 14, 2018) (providing that the definition of an ATDS is a central issue of the regulatory proceeding).  Accordingly, a stay is warranted.  *See Secure v. Ultimate Fitness Grp., LLC*, 18-20483, 2019 U.S. Dist. LEXIS 45194 (S.D. Fla. Mar. 18, 2019) (granting defendant's motion to stay while the FCC is reconsidering the definition of an ATDS);

---

[9]     The issue is also presently before the Seventh Circuit.  *See Gadelhak v. AT&T Services, Inc.*, No. 19-1738 (7th Cir.).

Order granting Motion to Stay, *Buhr v. ADT, Inc.*, No. 18-80605 (S.D. Fla. July 25, 2018), Dkt. No. 40 (staying a similar case arising under the TCPA while awaiting the FCC's promulgation of the revised definition of an ATDS); Order Staying Case, *Thomas v. Abercrombie & Fitch*, No. 16-11467 (E.D. Mich. June 19, 2018), Dkt. No. 71 (same).

*Fifth*, Plaintiff fails to show how discovery will be necessary if the FCC adopts the majority position and the plain language of the statute.  The factual allegations on the face of the Complaint show that the single informational text message that Plaintiff purportedly received was not the result of random or sequential number generation.  That dispositively ends the matter.  *See supra*, Section II.B.

*Finally*, Plaintiff conclusorily alleges that a stay would "greatly prejudice the Plaintiff," (Resp. at 20), but he fails to show how a stay—of any length—would prejudice him at all, given that he seeks only statutory damages related to a single informational text message that he purportedly received in error.  Thus, as Walmart explained in its opening brief—and as Plaintiff has failed to refute—a temporary stay pending the FCC's forthcoming ruling regarding the definition of an ATDS would simplify this litigation and benefit the Court and the parties.

## III.    CONCLUSION

For all of the foregoing reasons, Walmart respectfully requests that the Court dismiss Plaintiff's Complaint.  In the alternative, Walmart respectfully requests that the Court stay this action pursuant to the primary jurisdiction doctrine and/or this Court's inherent authority pending further guidance from the FCC.

Dated: October 10, 2019

Respectfully submitted,

*/s/ Karen P. Freeman*
Karen P. Freeman
Ark. Bar No. 2009094
MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.
4206 South J.B. Hunt Drive, Suite 200
Rogers, AR 72758
(479) 464-5682 Phone
(479) 464-5680 Fax
kfreeman@mwlaw.com

Meredith C. Slawe (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103
(215) 965-1202 Phone
(215) 965-1210 Fax
mslawe@akingump.com

*Attorneys for Defendant Walmart Inc.*