IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**KEVIN YASHTINSKY on behalf of**                    **PLAINTIFF**
**himself and all others similarly situated**

V.                      **CASE NO. 5:19-CV-5105**

**WALMART, INC.**                                             **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Walmart, Inc.'s ("Walmart") Motion to Dismiss or, in the Alternative, to Stay the Action. (Doc. 23). For the reasons set forth below, the Court **DENIES** Walmart's Motion.

## I. BACKGROUND

The following facts are taken from Mr. Yashtinsky's Complaint. (Doc. 3). On April 10, 2019, Mr. Yashtinsky received a two-part text message[1] on his wireless phone from Walmart without giving prior consent to Walmart to call or text him. The text messages stated:

> WalmartRx – 1[]of 2 – REPLY NEEDED. TO begin receiving automated messages on your prescriptions, please reply YES. To decline reply STOP[;]
>
> WalmartRX – 2[]of[]2 – Terms & Conditions at Walmart.com/alerterms Msg & data rates may apply. Reply HELP for help, STOP to unenroll[.]

Walmart sent the text messages from the short code number 455-00. Mr. Yashtinsky is not a Walmart Pharmacy customer, has never received prescriptions from a Walmart Pharmacy, and has never enrolled in Walmart's prescription messaging program. Mr.

---

[1] Mr. Yashtinsky refers to this as a "two-part text message call" and appears to assert that the messages were sent separately, so the Court will proceed as if two separate text messages were received by Mr. Yashtinsky. (Doc. 3, ¶ 22).

1

Yashtinsky has included his cellular number on the Do Not Call Registry since March 31, 2013. Mr. Yashtinsky further asserts that these text messages were sent "*en masse.*" (Doc. 3, at ¶ 45).

Following receipt of these text messages, Mr. Yashtinsky filed a class action complaint and demand for jury trial against Walmart on May 29, 2019, under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") seeking damages, injunctive relief, and any other available legal or equitable remedies. The Complaint alleges two causes of action: (1) negligent violations of the TCPA; and (2) knowing and/or willful violations of the TCPA. Subsequently, Walmart filed its present motion, in which it argues that Mr. Yashtinsky failed to plausibly allege Walmart's use of an automatic telephone dialing system ("ATDS"), a required element of Mr. Yashtinsky's TCPA claims, or, alternatively, that the Court should issue a stay under the primary jurisdiction doctrine or pursuant to its inherent authority and defer resolution until the Federal Communications Commission ("FCC") issues a ruling on the scope of the statutory definition of an ATDS. (Doc. 23).

Mr. Yashtinsky filed a Response, contending that the Court should not dismiss or stay this action because his allegations are sufficient to state a plausible claim for relief and because the majority of district courts have declined to stay proceedings in anticipation of the FCC's guidance on the definition of an ATDS. (Doc. 32). Thereafter, Walmart filed its Reply, claiming that Mr. Yashtinsky lacks standing under Article III to bring the present claims because he did not suffer a concrete injury, that the targeted text messages received by Mr. Yashtinsky could not support an inference that they were sent using an ATDS, and maintaining that the Court should issue a stay of the proceedings.

(Doc. 33). Mr. Yashtinsky then filed a Notice of Filing Supplemental Authority, which argues that he has made sufficient allegations and that Walmart's Article III standing argument is barred by precedent. (Doc. 36). Walmart responded to this filing, arguing that the authority cited by Yashtinsky is distinguishable from the facts at hand. (Doc. 37).

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. *Phipps v. F.D.I.C.*, 417 F.3d 1006, 1010 (8th Cir. 2005). However, this tenet "is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 665.

## III. DISCUSSION

### A. Standing

Walmart argues that Mr. Yashtinsky has not sufficiently pleaded an injury in fact to establish Article III standing. It is black letter law that Article III standing requires that "the plaintiff must have suffered an 'injury in fact.'" *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). In *Spokeo Inc. v. Robins*, the Supreme Court clarified that an "injury in fact" must be "concrete" and "particularized." 136 S. Ct. 1540, 1549 (2016). The Supreme Court held that a "bare procedural violation, divorced from any concrete harm" may not

satisfy the injury in fact requirement, but it noted that even "intangible injuries can nevertheless be concrete." *Id.* at 1549. In *Golan v. FreeEats.com, Inc.* the Eighth Circuit held that the recipient of two unsolicited answering machine messages suffered "a concrete injury" sufficient to establish Article III standing. 930 F.3d 950, 958 (8th Cir. 2019). In *Golan*, the Eighth Circuit noted that Congress, by passing the TCPA, elevated "to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (citing *Spokeo*, 136 S. Ct. at 1549). The TCPA prohibits sending text message solicitations using an automatic telephone dialing system without the express written consent of the called party. *Gould v. Farmers Ins. Exchange*, 288 F. Supp. 3d 963, 967 (E.D. Mo. 2018) (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016)). Walmart, however, urges the Court to adopt the rationale put forth in *Salcedo v. Hanna*, where the Eleventh Circuit found that the receipt of one unsolicited text message did not create a concrete injury sufficient to establish standing. 936 F.3d 1162, 1172 (11th Cir. 2019).

The Court finds that the Eighth Circuit's rationale in *Golan* supports the conclusion that Mr. Yashtinsky has sufficiently alleged a plausible injury-in-fact. In *Golan*, the Eighth Circuit found that the receipt of two answering machine messages bore "a close relationship to the types of harms traditionally remedied by tort law, particularly the law of nuisance." 930 F.3d at 959. Unwanted text messages are, if anything, more intrusive than unanswered messages left on an answering machine, especially since individuals are more likely to have their cell phones in close proximity at all times. *See Gould*, 288 F. Supp. 3d at 968 (holding that the receipt of unsolicited text messages creates an Article III injury-in-fact); *see also Riley v. California*, 573 U.S. 373, 385 (2014) (noting that cell

phones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy"). Here, Mr. Yashtinsky asserts that the unsolicited text messages he received were an aggravation, a nuisance, and invaded his privacy. (Doc. 3, at ¶ 17). He also alleges that the receipt of unsolicited text messages "wastes a quantifiable amount of available data on the recipient's cellular device[,] . . . temporarily reduces the available computing power and application processing speed on the recipient's device; . . . and requires expending a quantifiable amount of energy (electricity) to recoup the battery power lost as a result of receiving such a message." *Id.*

The Court has reservations that Mr. Yashtinsky's factual allegations regarding the waste of his data and electricity are enough by themselves to establish Article III standing. Taking all of his factual allegations together, however, the Court concludes that Mr. Yashtinsky pleaded facts that plausibly establish that he suffered a particularized and concrete injury-in-fact which is adequate to establish Article III standing.

### B. Factual Allegations Regarding ATDS

"To state a plausible cause of action under the TCPA, [a plaintiff] must allege that: (1) a call was made; (2) the caller used an ATDS or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have any prior express consent of the recipient." *Ueckert v. State Farm Bank, F.S.B.*, 2017 WL 3981136, at *1 (W.D. Ark. Sept. 11, 2017). Walmart contends that Mr. Yashtinsky has failed to allege that an ATDS was used to send him the offending text messages.

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). This definition has been the subject of considerable controversy: in 2015, the FCC held that any call made with equipment having the capacity to store and call numbers using a random or sequential number generator is a violation of the TCPA. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) ("[W]hen a caller places a call using equipment that has the requisite 'capacity' (as we construe the term here), the equipment is an autodialer and a caller using it 'makes' a call 'using an automatic telephone dialing system' under section 227(b)(1)(A).") [hereinafter "2015 FCC Order"]. The 2015 FCC Order also held that equipment without a "present capacity" to use a random or sequential number generator can still qualify as an ATDS if it has "potential capacity" to so do. *Id.* at 7971–77.

The D.C. Circuit Court of Appeals struck down the "potential capacity" portion of the 2015 FCC Order. *See ACA Int'l v. F.C.C.*, 885 F.3d 687, 691 (D.C. Cir. 2018). The D.C. Circuit held that the FCC's "potential capacity" definition would cover any smart phone that has the "potential capacity" to become an ATDS *via* the use of certain applications. *Id.* at 698. Since this decision, a circuit split has arisen on the question of what type of equipment qualifies as an ATDS under the TCPA. The Second and Third Circuits have held that an ATDS is a "device that currently has features that enable it to perform the functions of an auto dialer . . . whether or not those features are actually in use during the offending call . . . ." *King v. Time Warner Cable Inc.*, 894 F.3d 473, 477 (2d Cir. 2018); *see Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 121

6

(3d Cir. 2018) (affirming dismissal of plaintiff's claims because there was no genuine issue of material fact that the auto-dialer at issue only sent text messages to numbers that had been manually inputted into its system). On the other hand, the Ninth Circuit has adopted a broader interpretation of an ATDS, holding that an ATDS is equipment which has the capacity "(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator" and to dial such numbers automatically, even if the system must be turned on or triggered by a person. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018). The Eighth Circuit has not had an opportunity to opine on this issue. With these battling interpretations in mind, the Court turns to the question of the sufficiency of Mr. Yashtinsky's Complaint.

Walmart argues that Mr. Yashtinsky's Complaint merely recites the elements of a TCPA claim—namely, that an ATDS was used—and that such conclusory allegations are insufficient to plausibly allege a claim. (Doc. 23, at 4–5). Walmart further argues that Mr. Yashtinsky's allegations regarding the substance of the text messages show that the text messages in question were sent in error, and therefore could not have been sent by an ATDS. *Id.* at 9. Mr. Yashtinsky retorts that a bare allegation that an ATDS was used is sufficient to survive dismissal and that it is improper to require him to plead additional facts before discovery. (Doc. 32, at 5–6). Mr. Yashtinsky also argues that he has alleged sufficient additional facts to raise the inference that the text messages were sent by an ATDS. *Id.* at 7.

The Court finds that, for the purposes of a Rule 12(b)(6) motion, Mr. Yashtinsky's Complaint plausibly alleges the use of an auto-dialer with the present capacity to randomly generate telephone numbers to be called, which comports with the narrower

interpretation of an ATDS as adopted by the Second and Third Circuits. First, the Court agrees with other district courts that have held, given the lack of discovery at the pleading stage, that it would be improper to require a plaintiff to plead technical particulars of an ATDS. *See Hewitt v. Synchrony Bank*, 2017 WL 6349051, at *2 (W.D. Mo. Dec. 12, 2017) ("This Court also finds persuasive authority regarding the unreasonableness of requiring Plaintiff to plead specific details about the use of an ATDS prior to the benefit of discovery."); *Soular v. N. Tier Energy LP*, 2015 WL 5024786, at *3 (D. Minn. Aug. 25, 2015) ("Plaintiff's allegation that Defendants used an ATDS to send the text messages at issue is sufficient at this stage of the litigation, when no discovery has been completed."); *see Torres v. Nat'l Enter. Sys., Inc.*, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) ("[I]t would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail. Under such a standard, defendants . . . would be virtually immune to TCPA claims . . . .").

Second, the Court agrees with Mr. Yashtinsky that he has pleaded additional facts which give rise to the inference that an auto-dialer with the present capacity to randomly generate telephone numbers was used to send the offending text messages. Other district courts routinely allow plaintiffs to assert a variety of facts to support the assertion that a defendant used an ATDS, such as a robotic voice, a lack of human response, the timing and number of calls and messages, a click and pause upon answering telephone calls, the generic content of messages, or any other circumstances leading to their belief. *See Soular*, 2015 WL 5024786, at *3-4 (holding that the plaintiff pleaded sufficient factual allegations where he alleged facts regarding "the timeframe in which the messages were

interpretation of an ATDS as adopted by the Second and Third Circuits. First, the Court agrees with other district courts that have held, given the lack of discovery at the pleading stage, that it would be improper to require a plaintiff to plead technical particulars of an ATDS. *See Hewitt v. Synchrony Bank*, 2017 WL 6349051, at *2 (W.D. Mo. Dec. 12, 2017) ("This Court also finds persuasive authority regarding the unreasonableness of requiring Plaintiff to plead specific details about the use of an ATDS prior to the benefit of discovery."); *Soular v. N. Tier Energy LP*, 2015 WL 5024786, at *3 (D. Minn. Aug. 25, 2015) ("Plaintiff's allegation that Defendants used an ATDS to send the text messages at issue is sufficient at this stage of the litigation, when no discovery has been completed."); *see Torres v. Nat'l Enter. Sys., Inc.*, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) ("[I]t would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail. Under such a standard, defendants . . . would be virtually immune to TCPA claims . . . .").

Second, the Court agrees with Mr. Yashtinsky that he has pleaded additional facts which give rise to the inference that an auto-dialer with the present capacity to randomly generate telephone numbers was used to send the offending text messages. Other district courts routinely allow plaintiffs to assert a variety of facts to support the assertion that a defendant used an ATDS, such as a robotic voice, a lack of human response, the timing and number of calls and messages, a click and pause upon answering telephone calls, the generic content of messages, or any other circumstances leading to their belief. *See Soular*, 2015 WL 5024786, at *3-4 (holding that the plaintiff pleaded sufficient factual allegations where he alleged facts regarding "the timeframe in which the messages were

sent, the fact that the messages were sent 'en masse' as part of a promotional campaign, and that the messages were all sent from the same short code"); *Rouse v. Delta Air Lines, Inc.*, 2015 WL 4636726, at *3 (D. Minn. Aug. 4, 2015) (alleging generic content of messages, number of messages received, and a disregarded request for the messages to stop). On the other hand, the pleaded allegations may refute any inference of the use of an ATDS if the allegations indicate that human intervention caused the offending messages to be sent. *See Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 5093942, at *4 (C.D. Cal. Apr. 13, 2018) (dismissing complaint where plaintiff alleged that he received a text message informing him that his table was ready after he gave a hostess his phone number for the purpose of receiving such a message).

Third, while Walmart cites to multiple cases dismissing TCPA claims for failure to allege the use of an ATDS, those cases are distinguishable from the present case because they involve allegations that were scant or wholly devoid of any facts supporting the inference that the defendants used an ATDS. *See, e.g., Hyatt v. J.B. Hunt Transp. Servs., Inc.*, 2015 WL 13648356, at *1-2 (W.D. Ark. June 16, 2015) (dismissing TCPA claim where plaintiff merely alleged that he received multiple calls from defendant); *Margulis v. Generation Life Ins. Co.*, 91 F. Supp. 3d 1165, 1168 (E.D. Mo. 2015) (granting defendant's motion to dismiss where plaintiff made threadbare legal conclusions about the defendant's use of an ATDS and failed to link the defendant to the alleged conduct).

With these precedents in mind, the Court concludes that Mr. Yashtinsky's Complaint sufficiently alleges that Walmart used an ATDS to send the offending text messages, even if the Court were to adopt the Second and Third Circuit interpretations of that term. Mr. Yashtinsky has not only alleged that Walmart used an ATDS, but he has

also included factual allegations which, if taken as true, support that contention. Mr. Yashtinsky alleged the content of the text messages he received from Walmart and that those text messages appear generic rather than directed specifically at Mr. Yashtinsky. (Doc. 3, at ¶ 22). Mr. Yashtinsky also alleged that the text messages came from a short-code number owned by Walmart, 455-00, that he had never enrolled to receive messages from Walmart, and that he had included his cellular number on the Do Not Call Registry since March 31, 2013. *Id.* at ¶¶ 23–25. Admittedly, these allegations are not robust and may not survive summary judgment scrutiny, but if taken as true, they are sufficient to give rise to the inference that the text messages Mr. Yashtinsky received were sent *via* an auto-dialer with the present capacity to randomly generate telephone numbers. Furthermore, without the benefit of discovery, it would be unreasonable to require Mr. Yashtinsky to plead "specific technical details" of the alleged ATDS. In the Court's view, for the purposes of a Rule 12(b)(6) motion, Mr. Yashtinsky's Complaint includes sufficient allegations to draw the inference that an ATDS was used. Whether these allegations can be proven is a question to be decided at the summary judgment stage.

### C. Staying the Action

In *ACA International*, the D.C. Circuit applied *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–45 (1984), and set aside the FCC's interpretation of an ATDS. 885 F.3d at 703. Since this decision, the FCC held two public comment periods seeking comments "on several issues related to interpretation and implementation of the 'TCPA,'" including the scope of the ATDS definition. *Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the T.C.P.A. in Light of the D.C. Circuit's ACA Int'l Decision*, 33 FCC Rcd. 4864 (2018). In light of these

events, Walmart argues that the primary jurisdiction doctrine justifies staying the present case or that, alternatively, the Court should stay the case pursuant to its inherent authority.

### 1. Staying Proceedings Under the Primary Jurisdiction Doctrine

The primary jurisdiction doctrine is concerned with coordinating judicial and administrative decision making. *Access Telecomms. v. SW Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998). "The doctrine allows a district court to refer a matter to the appropriate administrative agency for a ruling in the *first instance*, even when the matter is initially cognizable by the district court." *Id.* (emphasis added). The primary reasons for applying the doctrine are: (1) "to obtain the benefit of an agency's expertise and experience . . . . 'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion'" and (2) to promote uniformity and consistency within the particular field of regulation. *Id.* (quoting *Far East Conference v. U.S.*, 342 U.S. 570, 574 (1952)). "No fixed formula exists for applying the doctrine of primary jurisdiction." *U.S. v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956). Rather, a court considers whether the reasons for the doctrine are present and whether application will aid the purposes for which the doctrine was created. *Access Telecomms.*, 137 F.3d at 608. Courts "are always reluctant, however, to invoke the doctrine because added expense and undue delay may result." *Id.* Notably, many other district courts have declined to issue stays in the wake of *ACA International*. *See, e.g., Samson v. United Healthcare Servs., Inc.*, 2019 WL 2173454, at *5 (W.D. Wash. May 20, 2019); *Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324, 336–37 (S.D.N.Y. 2019); *Singer v. Las Vegas Athletic Clubs*, 376 F. Supp. 3d 1062, 1070 (D. Nev. 2019); *Nicholson v. REI*

*Energy, LLC*, 370 F. Supp. 3d 1199, 1206 (D. Or. 2019); *Cline v. Ultimate Fitness Group, LLC*, 2019 WL 4671195, at *4 (M.D. Fla. Feb. 12, 2019); *Wheeler v. Portfolio Recovery Assocs., LLC*, 2019 WL 400114, at *4 (W.D. Tex. Jan. 22, 2019); *Gould v. Farmers Ins. Exch.*, 326 F.R.D. 530, 531–32 (E.D. Mo. 2018). Such decisions demonstrate that, even in the absence of agency guidance, the issues presented are not beyond the Court's capabilities or conventional experience.

Additionally, the primary jurisdiction doctrine is generally reserved for issues of first impression, which the issues currently before the FCC are not. The Court does not dispute that the FCC has jurisdiction to interpret the TCPA; regardless, the Court is capable of adequately adjudicating the parties' dispute using some combination of the FCC's prior orders, the statutory definition of an ATDS, and persuasive law that already exists on the issues.

Furthermore, any stay the Court could impose would be of uncertain length. Although Walmart points to a statement by FCC Commissioner Michael O'Rielly to prove that "the FCC's ruling appears imminent," the Commissioner, in those same remarks, acknowledged that quick action is improbable:

> To be clear, the Commission is not sitting on its hands unaware of the TCPA debates brewing in the courts and affected boardrooms. *But, we are a busy agency.* Under this Chairman, we have been extremely focused on moving an aggressive, deregulatory, pro-consumer agenda that reflects current market realities. Failure to address TCPA is not a failure of leadership . . . Instead, the onus is on you and others to raise awareness of the need for corrective actions to a much, much greater extent. *While I am already convinced of the need to act and can help somewhat, it's your job to convince my colleagues and agency staff to do so. May I humbly suggest that the advocacy of one lone industry will not be enough to truly move the needle. It will take extensive cooperation and collaboration with everyone else caught in the TCPA spider web, screaming the same message at the same fever pitch.*

*Remarks of FCC Commissioner Michael O'Rielly Before the ACA International Washington Insights Conference*, at 3 (May 16, 2019), *available at* https://docs.fcc.gov/public/attachments/DOC-357496A1.pdf (emphasis added). It is speculative to assert that an FCC decision is imminent. Additionally, "the FCC's order will be subject to further challenge, which is exactly what happened with the 2015 Declaratory Ruling." *Pieterson v. Wells Fargo Bank, N.A.*, 2018 WL 3241069, at *5 (N.D. Cal. July 2, 2018). "[T]his cycle of staying a case while an FCC order is pending only to have the FCC order challenged in court has played out before, demonstrating the real possibility of indefinite delay." *Id.* An indefinite delay strongly cuts against application of the primary jurisdiction doctrine to a decision the Court is otherwise competent to make. For all of these reasons, the Court declines to issue a stay under the primary jurisdiction doctrine.

### 2. Staying Proceedings Pursuant to the Court's Inherent Authority

Walmart alternatively urges the Court to stay this action pursuant to its inherent authority; the Court declines to do so. A district court's power to stay an action is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). A court may consider factors such as undue prejudice or advantage to the parties and the effect on judicial economy when deciding whether to issue a stay. *See, e.g., Mckinney Drilling Co., LLC v. Liberty Mut. Ins. Co.*, 2016 WL 3349326, at *2 (W.D. Ark. June 15, 2016).

Here, issuing a stay in the present case will not promote judicial economy. As indicated in the preceding section, any stay issued would likely be indefinite in length. *See* discussion *supra* Section III.C.1. Further, issuance of a stay likely will not simplify or

settle the issues implicated in this case. Additionally, there is no guarantee that the FCC will produce an order that resolves the issues specifically raised in this litigation. Walmart argues that any interpretation of the definition of an ATDS would have to be revisited if the FCC releases a contrary interpretation, but this argument fails to recognize that, even if the Court stays this action, the Court will eventually have to conduct a *Chevron* analysis to review any interpretation issued by the FCC. Moreover, staying the case would prejudice Mr. Yashtinsky by delaying the resolution of his claims. It is Walmart's burden to "make out a clear case of hardship or inequity in being required to go forward," *Landis*, 299 U.S. at 255, and Walmart has failed to meet this burden. Accordingly, the Court declines to issue a stay pursuant to its inherent authority because such a stay would not promote judicial economy and would unduly prejudice Mr. Yashtinsky.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Walmart's Motion to Dismiss or, in the Alternative, to Stay the Action (Doc. 23) is **DENIED**.

**IT IS SO ORDERED** on this 12th day of November, 2019.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE